## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

KOLON INDUSTRIES, INC.,

       Counter-claimant,

v.

E.I. du PONT de NEMOURS AND
COMPANY,

       Counter-defendant.

Civil Action No. 3:11-CV-622

## MEMORANDUM IN SUPPORT OF COUNTER-DEFENDANT
## E.I. DU PONT DE NEMOURS AND COMPANY'S
## MOTION FOR SANCTIONS AGAINST KOLON INDUSTRIES, INC.

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................1

    1.   Kolon's Attorneys Did Not Perform the Requisite Pre-suit Rule 11
        Investigation.................................................................................................2

    2.   Kolon Should Have Dismissed Its Claims When Discovery Exposed Them
        As False.......................................................................................................3

    3.   Kolon And Its Attorneys Deliberately Engaged In Abusive Discovery
        Tactics to Impede Discovery and Vexatiously Multiply These
        Proceedings.................................................................................................4

BACKGROUND ...................................................................................................4

ARGUMENT .........................................................................................................7

I.     KOLON FILED TACTICAL COUNTERCLAIMS IN BAD FAITH WITHOUT
      THE REQUISITE RULE 11 INVESTIGATION.......................................................7

    A.   Kolon Never Had Any Factual Basis For Claiming That DuPont Supply
        Agreements Foreclosed It From Selling Heracron® To U.S. Customers.............8

    B.   Kolon Pled Baseless Allegations in Bad Faith to Survive Rule 12 ....................11

    C.   Kolon's Counsel Did Not Review (or Disregarded) Kolon's Business
        Records Showing Its Sales Failures Were Its Own Fault, Not DuPont's ...........16

II.    AFTER DISCOVERY EXPOSED KOLON'S CLAIMS AS FALSE AND
      FRIVOLOUS, KOLON AND ITS COUNSEL FAILED TO WITHDRAW
      THEM AND SHOULD BE SANCTIONED.................................................................17

III.   KOLON PERPETUATED ITS STRATEGY TO OBSTRUCT AND DELAY
      THROUGH PERVASIVE DISCOVERY ABUSES AND MISCONDUCT.................20

    A.   Kolon and Its Counsel Repeatedly Misrepresented Material Facts
        Regarding Kolon's Production Capabilities .....................................................21

    B.   Kolon's Counsel Repeatedly Verified False Allegations in Discovery
        without Conducting the "Reasonable Inquiry" Required by Rule 26(g) ............22

    C.   Kolon and Its Counsel Repeatedly Engaged in Vexatious Conduct,
        Needlessly Multiplying the Proceedings and Abusing the Judicial Process
        in Bad Faith................................................................................................24

CONCLUSION.....................................................................................................29

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bell Atlantic v. Twombly*,
    550 U.S. 544 (2007)........................................................................1

*Blue v. U.S. Dept. of Army*,
    914 F.2d 525 (4th Cir. 1990) .........................................................8, 17

*Brubaker v. City of Richmond*,
    943 F.2d 1363 (4th Cir. 1991) ......................................................7

*Carefirst of Maryland, Inc. v. First Care, P.C.*,
    422 F. Supp. 2d 592 (E.D. Va. 2006) ............................................11, 18

*Continental Airlines, Inc. v. United Airlines, Inc.*,
    277 F.3d 499 (4th Cir. 2002) .........................................................12

*DuPont v. Kolon*,
    Case No. 10-1103 (4th Cir. Mar. 11, 2011) ..................................20

*DuPont v. Kolon*,
    Case No. 10-1103 at 23 (4th Cir. Mar. 11, 2011) ........................12

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
    637 F.3d 435 (4th Cir. 2011) .........................................................5, 6, 13

*Fahrenz v. Meadow Farm P'ship*,
    850 F.2d 207 (4th Cir. 1988) .........................................................17

*Goldstein v. Costco Wholesale Corp.*,
    322 F. Supp. 2d 660 (E.D. Va. 2004) ............................................8

*In re Kilgore*,
    253 B.R. 179 (Bankr. D.S.C. 2000) ..............................................8

*In re Kunstler*,
    914 F.2d 505 (4th Cir. 1990) .........................................................7

*Mancia v. Mayflower Textile Servs. Co.*,
    253 F.R.D. 354 (D. Md. 2008)........................................................23, 24

*Metropolitan Opera Ass'n v. Local 100, Hotel Employees and Restaurant Employees Int'l Union*,
    212 F.R.D. 178 (S.D.N.Y. 2003) ...................................................27

*Nat'l Hockey League v. Met. Hockey Club, Inc.,*
    427 U.S. 639 (1976)....................................................................................................20

*Salvin v. Am. Nat'l Ins. Co.,*
    No. 2:06-CV-264, 2007 WL 1097891 (E.D. Va. Apr. 1, 2007) .............................17

*Silvestri v. Gen. Motors Corp.,*
    271 F.3d 583 (4th Cir. 2001) .................................................................................18

*Suntrust Mortg., Inc. v. AIG United Guar. Corp.,*
    2011 WL 1225989 (E.D. Va. Mar. 29, 2011) .......................................................18

*Thompson Everett, Inc. v. Nat'l Cable Adver., L.P.,*
    850 F. Supp. 470 (E.D. Va. 1994) .........................................................................20

*U.S. v. Shaffer Equip. Co.,*
    11 F.3d 450 (4th Cir. 1993) ...................................................................................18

*Weatherbee v. Virginia State Bar, ex rel. Fourth Dist.-Sect. I Committee,*
    279 Va. 303 (Va. 2010).................................................................................11, 19

## STATUTES

28 U.S.C. § 1927........................................................................................................2, 4, 17

## OTHER AUTHORITIES

Fed. R. Civ. P. 26 ..........................................................................................................27

Local Rule 37(E).............................................................................................................27

Virginia Rules of Professional Conduct 3.1 and 3.4...............................................11, 23

Virginia Rules of Professional Conduct, Rule 4.1 .....................................................25

## INTRODUCTION

When DuPont caught Kolon stealing its trade secrets and filed suit in February 2009, Kolon quickly devised a strategy to hide the truth.  This Court witnessed Kolon's strategy unfold firsthand during the trade secrets case, where Kolon destroyed evidence, refused to produce certain witnesses, produced other witnesses who were evasive and not credible, and filed an endless series of baseless motions.  Discovery is now complete in the antitrust case, and it is clear that Kolon launched a frivolous antitrust action as part of its strategy to divert attention from its theft.  Indeed, Kolon's own executives, sales agents, documents, and expert confirm that Kolon's antitrust claims are baseless.  Moreover, Kolon and its counsel at Paul Hastings LLP and LeClairRyan (together, "Kolon's counsel" or "Kolon's attorneys") engaged in a pattern of abusive and vexatious discovery tactics designed to multiply the proceedings and tax the resources of DuPont and this Court.

It also is now clear that Kolon and its counsel misled DuPont, this Court, and the Fourth Circuit about the validity of its antitrust claims from the beginning to keep Kolon's case alive and strategy intact.  To satisfy the Fourth Circuit's standards for monopoly claims and avoid dismissal under Rule 12, Kolon nakedly alleged in its Counterclaim that "DuPont's market share remains greater than 70% … in the United States" and that "DuPont's conduct has had a direct, substantial and adverse effect on competition."  During oral argument in October 2009, Kolon's counsel at Paul Hastings responded to this Court's skepticism that Kolon merely asserted "conclusory claim[s]" and thus failed to satisfy *Twombly*: "Judge, I don't want you for a second to believe that we don't have an expert and haven't done an undertaking of the analysis."  The Fourth Circuit accepted this representation as true on appeal, trusting that Kolon's counsel had complied with Rule 11.

The truth is that Kolon never undertook the requisite pre-suit analysis and had no factual basis of any kind for these allegations. When Kolon finally retained its expert in August 2011, he determined that DuPont's market share never exceeded ▮▮ and fell to ▮▮ by the time Kolon filed its Counterclaims falsely alleging that DuPont enjoyed market share "greater than 70%." Kolon's expert also determined that DuPont's alleged conduct had not harmed competition in any way, further contradicting Kolon's Counterclaim.

DuPont has moved for summary judgment on the merits of Kolon's claims. Kolon has opposed that motion, perpetuating its bad faith in the face of overwhelming, unrebutted evidence and legal authority showing the claims to be baseless. Although these claims should be dismissed on the merits, Kolon also should be held accountable for its abusive strategy and misconduct. This Court has multiple tools at its disposal, including Fed. R. Civ. P. 11, 26, 37, and 56, 28 U.S.C. § 1927, the Virginia Rules of Professional Conduct, and the Court's inherent authority, to sanction Kolon and its attorneys by dismissing its claims and awarding DuPont fees and costs. DuPont respectfully submits that the Court should do so for the following reasons:

**1.    Kolon's Attorneys Did Not Perform the Requisite Pre-suit Rule 11 Investigation.**

Kolon claims that DuPont foreclosed Kolon from selling Heracron® to U.S. commercial customers through the use of exclusive, long-term supply agreements requiring specific customers to purchase Kevlar® from DuPont. Kolon's contemporaneous business records and the testimony of its own sales agents and employees show this claim to be false at the time it was filed. A proper pre-suit Rule 11 investigation would have revealed that DuPont supply agreements had nothing to do with Kolon's U.S. failures.

Kolon's attorneys did not consult the most knowledgeable individuals on this topic— Kolon's U.S. sales agents—before filing the claims. Despite identifying Kolon's U.S. sales agents as the "main contact" with U.S. customers who possessed "essential" evidence, Kolon did

not even notify them of the litigation, much less examine them or their documents to determine whether that information supported Kolon's claims. Had Kolon's counsel done so, they would have learned, as Kolon's own agents *all* testified under oath, that DuPont sales agreements had nothing to do with Kolon's U.S. sales failures.

Nor did Kolon's counsel apparently consult the senior Kolon business executives responsible for Kolon's U.S. business. Under oath, these executives could identify only *three* allegedly foreclosed customers out of more than 400 DuPont U.S. commercial customers. Even as to these three customers, Kolon's business records reveal that Kolon's ███████████ ████████████████████—not DuPont supply agreements—caused Kolon's failures in the U.S. Indeed, a 2008 email from Kolon's principal U.S. sales agent, Michael Mitchell, to the head of the Heracron® Business Team sums up the reasons for Kolon's U.S. failures:



(Ex. 1).

This information was available to Kolon *before* filing suit, but Kolon's counsel chose to assert tactical claims without conducting a proper Rule 11 investigation.

## 2. Kolon Should Have Dismissed Its Claims When Discovery Exposed Them As False.

Kolon and its counsel continued this case in bad faith after Kolon's own documents, agents, and employees revealed that DuPont supply agreements had nothing to do with Kolon's U.S. failures. The undisputed evidence confirms that Kolon's limited U.S. sales were attributable to Kolon's own failures, including ████████████████████████ ████████████████████████. Kolon's expert further doomed its claims by acknowledging that Kolon could not establish certain critical elements of its claims. At these,

and other, junctures, Kolon was duty-bound to withdraw its meritless claims.  But consistent with its strategy, Kolon plowed forward.

### 3.     Kolon And Its Attorneys Deliberately Engaged In Abusive Discovery Tactics to Impede Discovery and Vexatiously Multiply These Proceedings.

The Court warned Kolon's counsel during the trade secrets litigation to be mindful of 28 U.S.C. § 1927 and refrain from vexatious litigation.  D.I. 1177 (No. 09-cv-58).  Kolon and its counsel have ignored this warning by, *inter alia*:  misrepresenting critical facts in bad faith; willfully violating the Court's Order to produce "essential" documents from Kolon's U.S. sales agents and repeatedly misrepresenting purported efforts to do so; filing a half dozen frivolous discovery motions, each without the required meet-and-confer; producing an unknowledgeable Rule 30(b)(6) witness on a fraction of the topics agreed to and obstructing her deposition; requiring DuPont to prepare and produce a 30(b)(6) witness, refusing to examine that witness on the designated topics, and then falsely claiming to the Court that DuPont refused to produce a 30(b)(6) witness at all; moving to compel the production of the exact same financial data three times; and, most recently, filing a frivolous, tactical motion to disqualify Your Honor.

Each phase of Kolon's strategy is independently sanctionable.  In the aggregate, however, it shows the continuity and design of a deliberate pattern of misconduct and the need for severe sanctions against Kolon and its attorneys.  DuPont respectfully submits the only appropriate sanctions in this matter are dismissal of Kolon's frivolous counterclaims and the award of DuPont's fees and costs.

### BACKGROUND

DuPont filed suit against Kolon on February 3, 2009, for theft of DuPont's Kevlar®-related trade secrets.  (D.I. 1) (No. 09-cv-58).  Kolon responded by filing its antitrust Counterclaim on April 20, 2009, and filed its First Amended Counterclaim on August 25, 2009

4

and its Second Amended Counterclaim on August 31, 2009 ("SAC"). *See* D.I. 11 (No. 09-cv-58); D.I. 50 (No. 09-cv-58); D.I. 59 (No. 09-cv-58).   Among other things, Kolon alleges that: (1) "DuPont's market share remains greater than 70% of all shares by purchase volume of para-aramid fiber in the United States," D.I. 59 (No. 09-cv-58) ¶ 17; *see id.* at ¶ 34; (2) "[t]he relevant product market is the market for para-aramid fibers," *id.* at ¶ 18, because "meta-aramid or other synthetic fibers as substitutes for para-aramid fibers . . . are not viable substitutes and are not reasonably interchangeable with para-aramid fibers," *id.* at ¶ 21; (3) "Kolon's para-aramid fiber had similar if not superior tensile strength and quality compared to DuPont's Kevlar," *id.* at ¶ 28, but "[d]espite its high quality and low price, Kolon has garnered a mere .87% of the U.S. para-aramid market to date [August 2009]," *id.* at ¶ 28; *see id.* at ¶ 34; and (4) "[b]ecause DuPont's supply contracts severely restrict access to customers and preclude effective competition, DuPont's conduct has a direct, substantial and adverse effect on competition.   Kolon further contends DuPont's anticompetitive conduct has allowed it to control output and increase prices for para-aramid fiber in the United States." *Id.* at ¶ 35.   The relevant time period is January 1, 2006 to April 20, 2009. Ex. 62 at 33-37.

Finding that Kolon's proffered geographic market failed as a matter of law, the Court dismissed Kolon's counterclaims. *See* D.I. 100 (No. 09-cv-58) at 55-56; D.I. 101 (No. 09-cv-58).   On March 11, 2011, the Fourth Circuit reversed this holding. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 454 (4th Cir. 2011).   On remand,  D.I. 1027 (No. 09-cv-58), the Court entered a Scheduling Order governing discovery on Kolon's antitrust counterclaims, D.I. 1219 (No. 09-cv-58).   As the parties agreed, discovery produced in the trade secrets case "shall be available to and usable by the parties only with respect to prosecuting or defending Kolon's Counterclaim . . . ." D.I. 1219 (No. 09-cv-58) at 4.   Accordingly, the facts

relevant to the instant motion include those discovered during DuPont's trade secret case, and include depositions and production of documents that pre-date the opening of discovery in the antitrust matter. *Id.*

On September 15, 2011, the parties appeared before the Court for a status conference. Ex. 2, Sept. 15, 2011 Hr'g Tr.  Regarding open discovery issues, the Court addressed, among other things, Kolon's document production and English translations of Kolon's Korean documents. *See, e.g.*, *id.*, at 5-7, 13-15.  Kolon's lead counsel admitted to the Court that she had not reviewed Kolon's Korean documents. *Id.*; *see also* Ex. 3.

On September 27, 2011, three days before the close of fact discovery, D.I. 95, Kolon served its responses and objections to DuPont's Fourth Set of Interrogatories. Ex. 4, Kolon's Resps. To DuPont's 4th Set of Rogs.  In response to DuPont's interrogatory concerning Kolon's contention that "DuPont held 'over 70% of the U.S. para-aramid fiber market,'" Kolon stated: "Kolon will produce its expert reports at the time appointed in the Federal and Local Rules and the Court's Scheduling Order." *Id.* at 8-9.

On November 11, 2011, Kolon served the expert report of Dr. Gustavo Bamberger.  In his report, Dr. Bamberger opined that " ███████████████████████████████ ███████████████████████████████████████." Ex. 5 Bamberger Report at 16.  At his November 29, 2011 deposition, Dr. Bamberger testified that when Kolon filed its Counterclaim, there had been no harm to competition. Ex. 6 Bamberger Tr. 251:13-252:5 (stating, ███████████████████████████████████████ ████████████████████████ and agreeing that the alleged anticompetitive effect does not occur before 2011).

Discovery on the counterclaims exposed fatal weaknesses in Kolon's claims that merit entry of summary judgment, and DuPont so moved on December 2, 2011.[1] *See* D.I. 255. In addition, and as detailed more thoroughly below, the conduct of Kolon and its counsel warrants sanctions, including dismissal of Kolon's counterclaims.

## ARGUMENT

### I. Kolon Filed Tactical Counterclaims In Bad Faith Without The Requisite Rule 11 Investigation

Kolon filed its counterclaims without conducting the required pre-filing investigation. Instead, Kolon simply stitched together the requisite legal standards without conducting a factual investigation into its central "foreclosure" claim or the accompanying factual allegations regarding pricing, quality, market substitution, and market share. A proper pre-filing Rule 11 investigation would have confirmed that Kolon's claims were baseless.

Rule 11 requires an attorney to conduct a reasonable investigation of the factual and legal basis of a claim prior to filing. *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991). "[T]he factual inquiry necessary to file a complaint is generally satisfied if all of the information which can be obtained prior to suit supports the allegations made, even though further facts must be obtained through discovery to finally prove the claim." *In re Kunstler*, 914 F.2d 505, 516 (4th Cir. 1990). Here, ***none*** of the information available to Kolon's counsel before filing suit supports Kolon's allegations.

Nor can counsel rely on Kolon to satisfy its ethical obligations. "Blind reliance on the client is seldom a sufficient inquiry." *Id.* at 514 (citations omitted). "[C]ounsel cannot simply

---

[1] *See* DuPont's Memorandum in Support of Its Motion for Summary Judgment for a detailed review of additional relevant facts. D.I. 255.

rely on a client's patently incredible testimony when any reasonable investigation of the factual

bases for the client's claims or examination of materials obtained in discovery would reveal the

paucity and implausibility of the evidence." *Blue v. U.S. Dept. of Army*, 914 F.2d 525, 543 (4th

Cir. 1990).  Sanctions also may be imposed upon a client where the client is in a better position

to investigate the facts and assure that the information filed with the court is correct.  *In re*

*Kilgore*, 253 B.R. 179, 186 (Bankr. D.S.C. 2000) (citing *Bus. Guides, Inc. v. Chromatic Comm.*

*Enter., Inc.,* 498 U.S. 533, 549 (1991)).  Even the most cursory investigation would have

revealed the falsity of Kolon's claims.

### A. Kolon Never Had Any Factual Basis For Claiming That DuPont Supply Agreements Foreclosed It From Selling Heracron® To U.S. Customers

Kolon's counterclaims rest entirely on the premise that DuPont unlawfully exercised

monopoly power by entering into exclusive, long-term supply agreements to foreclose U.S.

commercial customers from doing business with Kolon.  Kolon's foreclosure claims were fiction

when written, and an adequate pre-complaint investigation would have revealed them as such.

The lack of Rule 11 investigation is perhaps most apparent from Kolon's counsel's

failure to interview *any* of Kolon's U.S. sales agents prior to filing suit.  As Kolon's counsel told

the Court, Kolon's U.S. sales agents "are the *main contact* between Kolon and its United States'

customers," and have "*essential*" evidence for Kolon's counterclaims.  D.I. 159, at 18 (emphasis

added).  Kolon was obligated to interview these witnesses with "essential" evidence before filing

suit.  *See Goldstein v. Costco Wholesale Corp.*, 322 F. Supp. 2d 660, 664 (E.D. Va. 2004)

(imposing sanctions where plaintiff failed to conduct pre-filing investigation that would have

revealed many rebuttal witnesses presented by defendant at trial).  Kolon's counsel did not speak

with them until years after Kolon filed its counterclaims.  *See* Ex. 7, ███ Dep. at 177:4-178:14;

Ex. 8, ███████ Dep. at 128:9-129:6; Ex. 9, ██████ Dep. at 66:9-71:23; Ex. 10, ████ Dep. at 129:11-132:17; Ex. 11, ██████ Dep. at 45:14-16; Ex. 12, █████ Dep. at 129:2-6, 130:3-7.

If Kolon's counsel had spoken to its sales agents, they would have learned that Kolon's foreclosure claim never had any factual basis. Each of Kolon's U.S. sales agents testified that ████████████████████████████████████████████. *See* D.I. 255 ¶¶ 35, 48; Ex. 13, Mitchell Dep. 85:5-11; Ex. 7 at 91:1-92:5; Ex. 10 at 155:9-12; Ex. 8 at 48:2-19; Ex. 9 at 40:9-14; Ex. 11 at 33:17-37:18; 51:8-52:5; *see also* Ex. 12 at 28:19-24; 151:15-152:5. To the contrary, they testified that Kolon's █████████████████████████████████████████████ █████████████████████ and other problems caused Kolon's limited U.S. sales.[2]

Kolon's counsel also apparently did not interview Kolon's employees as part of a pre-suit investigation. Ex. 14, Seo Dep. at 285:16-286:10; Ex. 15, Park Dep. at 402:14-21; Ex. 16, Kang Dep. at 330:17-20. In their depositions, Kolon executives could identify only three allegedly foreclosed U.S. customers out of over 400 DuPont U.S. commercial customers. *See* D.I. 255, at 16. Had the requisite inquiry occurred, this revelation alone would have exposed the frivolousness of Kolon's foreclosure claim. Even if Kolon's attorneys believed there was a wisp of a claim at that point, they were required to investigate the circumstances relating to these three customers. Such an inquiry would have slammed the door on Kolon's counterclaims.

████████. Y.S. Seo, the leader of the Heracron® Business Team, identified only ████████ and ███ as foreclosed to Kolon by DuPont supply agreements based on vague, unsubstantiated hearsay. Ex. 14 at 282:24-283:23. Had Kolon's counsel interviewed Mr. ████

───────────────────────

[2] *See, e.g.*, Ex.13 at 30:20-24; 54:10-15; 66:18-71:2; 132:7-133:7; 141:4-8; 172:7-19; 220:25-221:13; 251:11-18; Ex.7 at 96:13-97:19; 118:19-119:9; Ex. 12 at 28:15-32:04; Ex.8 at 105:86-18; Ex. 9 at. 36:22-37:15; 63:10-64:5; Ex. 11 at 50:5-51:1.

█████, the Kolon sales agent responsible for ██████, they would have learned that it was

"█████████" for ████████ to purchase Heracron® during the relevant time period because

████████ could not qualify Heracron® due to its persistent quality problems. Ex. 12 at 28:15-

32:30. Mr. Seo also must have known this as the head of the business.

████. Similarly, had Kolon's counsel interviewed the Kolon sales agent responsible for

█████, Mr. Michael Mitchell, they would have learned that █████ asked Kolon to ███████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████



████████████████████████████████████████████[3] *See* Ex. 17.

████████. Kolon executive D.S. Kang, who was in charge of Kolon's worldwide pulp

sales, identified ████████ as the third U.S. customer that allegedly was foreclosed from buying

Heracron® due to a DuPont supply agreement. Ex. 16 at 311:12-18, 312:13-24. In an August

2008 e-mail, however, Mr. Kang himself ███████████████████████████████████

████████████████████████████████

███████████████████████████████████████████████████████.

Ex. 18. Mr. Kang testified under oath at his deposition, however, that Kolon had "█████████

█████" to sell pulp to U.S. customers, such as █████████████ Ex. 16 at 57:3-7. Mr. Kang did

not tell the truth. Confronted with this misrepresentation on summary judgment, Mr. Kang and

---

[3] This e-mail was available in Kolon's own files and was sent to Mr. Seo, indicating that a proper examination of Kolon's business records and Mr. Seo by Kolon's counsel would have revealed the falsity of claiming that ████ refused to deal with Kolon.

Kolon's counsel dug in deeper by absurdly claiming that Kolon ████████████ and

that when he wrote "████████████," he merely meant Kolon lacked the

"██████" to sell to ████████ because of a DuPont supply agreement.  Ex. 44 to D.I.

275 at 3 (emphasis added).  Mr. Kang's claim is nonsensical and not credible given that he was

responding to ████████████, and it contradicts other Kolon

documents showing Kolon's ████████████.  *See, e.g.,* Exs. 19-21.

### B. Kolon Pled Baseless Allegations in Bad Faith to Survive Rule 12

Kolon threw the constellation of buzzwords and rote antitrust concepts into its

Counterclaim to withstand a motion to dismiss.  A proper Rule 11 investigation, however, would

have shown Kolon's critical allegations in its SAC to be untrue and lacking a good faith basis.[4]

### 1. Kolon Misrepresented DuPont's Market Share and Competitive Harm

In paragraph 17 of Kolon's Second Amended Counterclaim ("SAC"), Kolon alleges that

"DuPont's market share remains greater than 70% of all sales by purchase volume of para-

aramid fiber in the United States."  *See also* SAC ¶ 34.  In paragraph 35 of the SAC, Kolon

alleges that "DuPont's conduct has had a direct, substantial and adverse effect on competition."

---

[4] The Court also has authority to sanction Kolon's counsel for violating Rules 3.1, 3.3, and 3.4 of the Virginia Rules of Professional Conduct because they brought a proceeding without a non-frivolous basis for doing so; filed claims "when it [was]obvious that such action would serve merely to harass or maliciously injure another;" and/or "fail[ed] to disclose a fact to a tribunal when disclosure is necessary to avoid assisting a . . . fraudulent act by the client."  Va. Rules of Prof'l Conduct 3.1, 3.3, 3.4; *see also, e.g., Carefirst of Maryland, Inc. v. First Care, P.C.,* 422 F. Supp. 2d 592 (E.D. Va. 2006) (finding that a party arguably violates Virginia Rules of Professional Conduct 3.1 and 3.4 by filing claims without factual or legal basis, and *sua sponte* ordering plaintiff to show cause why sanctions should not be imposed); *Weatherbee v. Virginia State Bar, ex rel. Fourth Dist.-Sect. I Committee,* 279 Va. 303, 308-09 (Va. 2010) (holding that attorney violated Rule 3.1 by bringing a medical malpractice action against a physician who had not treated the attorneys' client and was not a physician at the client's hospital at the time the client was treated).

Kolon's counsel simply pled to the standards without a factual investigation to survive Rule 12. The Fourth Circuit imposes a minimum threshold of 70% market share for a finding of monopoly power, which the Fourth Circuit reiterated in this very case. *See DuPont v. Kolon*, Case No. 10-1103 at 23 (4th Cir. Mar. 11, 2011). Moreover, the Fourth Circuit recognizes the essential element of harm to competition under the Sherman and Clayton Acts. *See, e.g.*, *Continental Airlines, Inc. v. United Airlines, Inc.*, 277 F.3d 499, 515-16 (4th Cir. 2002). Discovery has revealed that Kolon had no bases for these allegations, despite its counsel's claim to the contrary in the October 2009 hearing on DuPont's motion to dismiss:

> THE COURT: The message of *Twombly* is, if you've got a case, plead it, and don't be subtle about it. Say it right. How long will it take you to do that, do you think?. . . .I assume, from what I've seen so far, you're probably going to have to get an expert to do some looking at some of these things.
>
> KOLON's COUNSEL: Judge, I don't want you for a second to believe that we don't have an expert and haven't done an undertaking of this analysis.

Ex. 22, Hr'g Tr. at 71:19-72:4 (Oct. 14, 2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007)).

During fact discovery, Kolon failed to provide any factual basis for its "greater than 70%" market share allegation, instead relying entirely on ***forthcoming*** expert analysis. Ex. 4 at 8-9. Contrary to the allegations in its SAC and its counsel's representation to the Court, Kolon's expert (retained in August 2011, nearly two years after the October 2009 hearing) found that (i) DuPont's market share never exceed █ during the relevant time period and had declined to █ by the time Kolon filed its Counterclaim (Ex. 5 at 16-17); and (ii) there had been no harm to competition when Kolon filed its Counterclaim (Ex. 6 at 251:13-252:5). Thus, Kolon's "greater than 70%" market share and "competitive harm" allegations in its SAC were deliberate fictions from the moment pled designed solely to stave off a Rule 12 dismissal.

## 2.  Kolon Misrepresented Heracron®'s Competitiveness

In paragraph 28 of the SAC, Kolon asserts that "Kolon para-aramid product was more reasonably priced than DuPont's Kevlar®." Had Kolon's counsel examined Kolon's own agents and business records, however, they would have learned that Heracron® was ████████ ████████████████████. They also would have learned that Kolon ignored its agent's advice to ████████████████. *See* Ex. 13 at 102:9-20; Ex. 23 10/10/08 email exchange with Mitchell and Kim ("████████████████████ ████████████████████") (emphasis added).[5] Mr. Mitchell advised Kolon that customers would view the ████████ ████████████████, as a "████████." (Ex. 29).  Kolon's documents show that so-called "key" customers canceled orders due to Kolon's high prices.[6] *See, e.g.,* Ex.

---

[5] *See, e.g.,* Ex. 24 (email from Mr. Mitchell regarding Kolon's price increase, noting that at the new price "████████████████████████"); Ex. 25 (Mr. Mitchell advises: …[████████████████████"); Ex. 26 (Mr. ████ advises: "████████ ████████████████████."); Ex. 27; Ex. 28.

[6] *See also* Ex. 1 (Mitchell writes: "████████████████████ ████████████████████████ ████████████"); Ex. 30, 1/16/08 email from ████████ to Mitchell ("████████████ ████████████████████"). (emphasis added); Ex. 24 ("████████████████████ ████████████████"); Ex. 32); Ex. 33 (Kolon document noting that ████████████████████████); Ex. 34 (Kolon document noting that U.S. customer ████ said that "████████████████").

30, 1/16/08 email from ██████████ to Mitchell ("█████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████" (emphasis added)); *see also* Ex. 31 (noting Kolon had raised its price to

███ by ████ resulting in a price as much as ████ higher than the competition).  Despite this

unrebutted evidence from Kolon's own documents and agents, in its Summary Judgment

Opposition Kolon perpetuate its false claim that it was more reasonably priced than the

competition.  D.I. 275, at 22-23.

Also in paragraph 28 of the SAC, Kolon asserts that "Kolon's para-aramid fiber had

similar if not superior tensile strength and quality compared to DuPont's Kevlar®."  Had Kolon's

counsel reviewed Kolon's files and interviewed its sales agents and employees, they would have

learned that so-called "key" customers and others ████████████████████████████

██████████████, particularly during the earlier stages of the relevant time period.[7]  Indeed,

Kolon's files contain reams of complaints regarding Heracron®'s quality.  *See, e.g.*, Ex. 35 (Mr.

████████ writes: "████████████████████████████████████████████████

██████████████████████████████████████████████████").  Numerous

U.S. customers, including ████████████████████████████████████████████

██████████████████████████████ were willing to consider buying Heracron®, but

_____

[7] Key customers, including ████████████████████████████████████████
████████████ evaluated Heracron® and found its quality unsatisfactory.  *See* D.I. 255 ¶ 61; Ex. 36,
Choi Tr. 89:17-91:6;  Ex. 12 at 28:15-32:04; Ex. 8 at 105:8-18; Ex. 40; Ex. 41 at 7958; Ex. 42;
Ex. 16 at 338:21-340:20; Ex. 14 at 212:20-213:2.

found its quality unsatisfactory.[8]

Faced with this uncontroverted evidence, Mr. Kang and Kolon's counsel perpetuated their false claim regarding Heracron® quality in Kolon's Summary Judgment Opposition, submitting sworn testimony from Mr. Kang that " ███████████████████████████████████████████ ███████████████████████████████████████████████████████ " Ex. 44 to D.I. 275. This is a stunning claim in light of the overwhelming, undisputed evidence to the contrary. Mr. Kang, Kolon, and its counsel should be sanctioned for this false testimony. *See* Fed. R. Civ. P. 56(h).

### 3. Kolon Misrepresented Para-aramid Product Substitution

Finally, in paragraph 21 of the SAC, Kolon alleges that meta-aramid and other "synthetic fibers are not viable substitutes and are not reasonably interchangeable with para-aramid fibers." Kolon, thus, concludes: "The relevant product market is the market for para-aramid fibers." SAC at ¶18. Had Kolon's counsel reviewed Kolon's own files before filing suit, they would have discovered that Kolon's own business records directly contradict these allegations, showing that Kolon itself recognized fierce competition with non-para-aramid products. *See, e.g.*, Ex. 48

████████████████████████████████████████████████████

███████████████████; Ex. 49, 11/07/07 Kolon Bus. Trip Rep., at 561 ("███████

███████████████████████████████████"); Ex. 50

_____

[8] D.I. 254 Ex. 1 ; Ex. 43, ███████ Dec. ¶ 19; Ex. 36, Choi Dep. 89:17-91:6; Ex. 37, ██ Dec. ¶ 21; Ex.38; Ex. 12 at 28:15-32:04; Ex. 39, ████ Dec. ¶ 22; Ex. 8 at 105:8-18; Ex. 40; Ex. 41 at 7958; Ex.42; Ex. 16 at 338:21-340:20; Ex. 14 at 212:20-213:2 ; Ex. 7 at 118:19-119:9; Ex. 44, ██████ Dec. ¶¶ 29-30; Ex. 45; Ex. 46 ("█████████████████████████████ █████████████████"); Ex.21 ("████████████ █████"); Ex. 47.

(12/10/06 Tech. Fibers Rep., (identifying █████████████████████████

█████████████████████████████████████████████"); Ex. 51 at

KA00069578 (██████████████████████████████████████).  Kolon's

agents advised its employees about competition with these substitutes.  *See, e.g.*, Ex. 13 at 61:2-

63:22 (describing variety of "not in kind" substitute products that he discussed with his contacts

at Kolon); Ex. 7 at 88:6-89:20.  A proper Rule 11 investigation would have revealed these

irrefutable facts.

### C. Kolon's Counsel Did Not Review (or Disregarded) Kolon's Business Records Showing Its Sales Failures Were Its Own Fault, Not DuPont's

In addition to the foregoing, Kolon's files brimmed with documents showing that its

limited U.S. sales had nothing to do with DuPont supply agreements.  Kolon's counsel never

reviewed—or disregarded—these documents as part of a pre-suit investigation.  For example:

- Kolon's insistence that customers either ████████████████████████
  ███████ caused Kolon to lose U.S. customers.  Ex. 63 ("
  ████████████████████████"); Ex. 1 (Mr. Mitchell writes to Mr. Seo: "
  ███████████████████████████████████████." (emphasis
  added))[9]

- Refusal to establish a U.S. warehouse to provide prompt and timely delivery of
  products also plagued Kolon.  *See, e.g.*, Ex. 52 (customer letter to Kolon U.S. sales
  agent: "████████████████████████████████████████
  ████████████████████████████████████████

---

[9] Mr. Mitchell wrote to Messrs. Seo and Juwan Kim in May 2008: "████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████" Ex. 1.

███████████████████████████████████████████
████████████████." (emphasis added)).

- Some 16-18 members of the Heracron® Business Team met on February 20, 2009—just two months before Kolon filed its SAC—to discuss what was currently going on with the Heracron® business. Ex. 14 at 269-74 and Ex. 53. The meeting minutes identify issues affecting Heracron® sales and do not so much as mention DuPont supply agreements. *Id.*

- On April 11, 2009, just nine days before Kolon filed its counterclaims, one of its sales agents, Mr. ███████, sent Mr. Kang an email entitled "Market Status Report" that identified the ███████████████████████ as the cause of Kolon's woes. Ex. 54, April 9, 2009 email from Mr. ███████.[10] There is no mention of DuPont supply agreements. *Id.*

## II.   After Discovery Exposed Kolon's Claims As False and Frivolous, Kolon and Its Counsel Failed To Withdraw Them And Should Be Sanctioned

Kolon and its counsel compounded their bad faith by refusing to withdraw Kolon's claims after discovery conclusively revealed the absence of evidentiary support for them. This conduct requires dismissal of Kolon's counterclaims and an award of DuPont's fees and costs pursuant to at least 28 U.S.C. § 1927 and the Court's inherent power.

Section 1927 provides that an attorney may be required to pay costs, expenses, and attorneys' fees where an attorney unreasonably or vexatiously multiplies proceedings. *Blue v. Dept. of the Army*, 914 F.2d 525, 538 (4th Cir. 1990). Ignoring evidence, pressing forward with a position regardless of its merit, and other unreasonable conduct should be sanctioned under Section 1927. *Id.* (section 1927 sanctions warranted for "fail[ing] to perform their responsibilities of investigating the foundation of their clients' claims . . . and simply press[ing]

---

[10] Kolon's business plans and investment proposals also make clear that Kolon was focused on ██████████████████████████████████, which further explains its limited success in the U.S. during the relevant time period. For example, see: 2008 Business Plan, Ex. 55 (noting that ████████████████████████████████████████████ ██████████████████████████████████████████") *see also;* Ex.56, 2006 Investment Proposal, at 674; 2008 Investment Proposal, at 702.

forward with their case heedless of whether the claims they [are] pursuing [are] legitimate ones"); *Fahrenz v. Meadow Farm P'ship*, 850 F.2d 207, 211 n.1 (4th Cir. 1988) (section 1927 sanctions are appropriate if counsel has evidence that refutes the basis of their claims yet "continue[s] to pursue their claims for some time after it would have been reasonable and responsible to dismiss their claims"); *Salvin v. Am. Nat'l Ins. Co.,* No. 2:06-CV-264, 2007 WL 1097891, at \*9-10 (E.D. Va. Apr. 1, 2007) ("[P]ursuing a path that a reasonably careful attorney would have known after appropriate inquiry to be unsound [is] objectively unreasonable and vexatious.").

This Court also has inherent authority to assess attorneys' fees, costs, and fines to sanction a party and its counsel for abuse of judicial process.  The "'inherent power extends to a full range of litigation abuses,'" including the "commencement or continuation of litigation in bad faith," and "'conducting litigation in bad faith, vexatiously, wantonly or for oppressive reasons.'"  *Suntrust Mortg., Inc. v. AIG United Guar. Corp.*, 2011 WL 1225989,  at \*14 (E.D. Va. Mar. 29, 2011), (quoting *Chambers v. NASCO*, 501 U.S. 32, 45-46 (1991)); *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001).  This inherent authority includes the power to dismiss an action "when a party deceives a court or abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process."  *U.S. v. Shaffer Equip. Co.*,  11 F.3d 450, 462 (4th Cir. 1993); *see also Silvestri,* 271 F.3d at 593 (dismissal is justified in cases of bad faith or knowing misconduct).

There were multiple junctures throughout this litigation when it must have been clear to Kolon and its counsel that the case had no merit and should have been voluntarily dismissed. Yet Kolon and its counsel pressed forward in bad faith:

- *First*, Kolon should have dismissed its claims after reviewing its own documents for production and finding no support for its "foreclosure" claim and countless

18

documents revealing many reasons for Kolon's limited U.S. sales unrelated to DuPont agreements. D.I. 255 at 30-37.

- **Second**, Kolon should have dismissed its claims in the fall of 2009 when it admitted that it had contacted only ███ the hundreds of U.S. commercial customers about getting qualified to sell Heracron®. Ex. 57, Kolon Resp. 2d Set of Interrogatories at 9-10. Kolon certainly should have withdrawn its claims when its own expert admitted in his deposition on November 29, 2011, that Kolon could not be foreclosed from customers whom it had never contacted about getting qualified. Ex. 6 at 130:25-131:07; 256:3-17. D.I. 255 at 32-34.

- **Third**, Kolon should have dismissed its claims after the September 28-29, 2011 deposition of Y.S. Seo and the September 30, 2008/October 3, 2011 deposition of D.S. Kang. Messrs. Seo and Kang admitted facts eviscerating Kolon's claim, such as: they could identify only three allegedly foreclosed customers; they admitted that Kolon could not produce ███;[11] they admitted that Kolon could not supply ███ to U.S. customers; and they admitted that Kolon's sales were inhibited by numerous problems, including ███████████████████████████████████████████
  ████████████████████████████. Ex. 14 at 233:5-23; 114:1-9; 124:11-15; 108:25-109:12; 56:10-57:1; Ex. 16 at 233:22-234:21; 239:3-17; 327:20-328:11; 198:15-199:15; 209:14-210:21. They also acknowledged that not one of the many Kolon documents addressing problems with U.S. sales mentions DuPont supply agreements. Ex. 14 at 166:12-169:18; 170:10-171:10; 172:3-22; Ex. 16 at 300:2-301:3; 329:9-19.

- **Fourth**, Kolon should have dismissed its claims when J.T. Park, the head of Heracron® production, admitted at his deposition that Kolon ████████████████████████████████
  ██████████████████████████████████████████ Ex. 15 at 194:22-195:4; *see also* Ex. 55, 2008 Bus. Plan, at 126. This disposed of any purported lost sales, as Kolon's expert has admitted. Ex. 6 at 175:11-21 .

- **Fifth**, Kolon should have dismissed its claims when its own U.S. sales agents testified under oath in front of Kolon's counsel that DuPont's supply agreements ████
  ████████████████████ D.I. 255 ¶ 35. Kolon's U.S. sales agents testified that Kolon failed in the U.S. due to problems such as ████████████████████████████████
  ███████████████████████████.[12]

---

[11] Kolon's counsel unequivocally represented to the Court during the October 14, 2009 hearing that Kolon could produce ███ for sale. Ex. 22, Hr'g Tr. (10/14/09) at 61:15-25. This was untrue. Ex. 16 at 35:25-36:9.

[12] Ex. 13 at 30:20-24; 54:10-15; 66:18-71:2; 132:7-133:7; 141:4-8; 172:7-19; 220:25-221:13; 251:11-18; Ex. 7 at 96:13-97:19; 118:19-119:9; Ex. 12 at 28:15-32:04; Ex. 8 at 105:8-18; Ex. 9 at 36:22-37:15; 63:10-64:5; Ex. 11 at 50:5-51:1.

- *Sixth*, Kolon should have dismissed its claims when numerous U.S. customers, including so-called "key" customers such as ▮▮▮▮, submitted sworn declarations attesting that they were willing to do business with Kolon but declined to do so for reasons unrelated to DuPont supply agreements.  Many of these customers also documented Kolon's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as reasons for Kolon's limited U.S. sales.  *See* Exs. 10-18 to D.I. 255.  Not one U.S. customer has claimed it was barred from buying Heracron® due to any conduct by DuPont.  *See id.*

- *Seventh*, Kolon should have dismissed its claims when its own expert admitted that DuPont did not possess monopoly power under the Fourth Circuit threshold and that there was no competitive harm in the relevant time period.  Ex. 5, Bamberger Rep. at 15-18, 27-29; Ex. 6 at 164:17-22; 267:4-17.  These are essential elements of Kolon's claims.  *See e.g., Thompson Everett, Inc. v. Nat'l Cable Adver., L.P.*, 850 F. Supp. 470, 482 (E.D. Va. 1994) (granting summary judgment on Section 1 and Section 2 claims because, *inter alia*, "the Plaintiff would not be able to prove at trial that exclusive representation agreements have had a substantial anticompetitive effect"); *DuPont v. Kolon*, Case No. 10-1103 (4th Cir. Mar. 11, 2011).  The instant Kolon's counsel first learned of Dr. Bamberger's opinions, Kolon should have dismissed its claims—and it certainly should have done so at the conclusion of his deposition.

- *Eighth*, if all the foregoing were not enough, Kolon should have dismissed its claims when it received DuPont's summary judgment motion on December 2, 2011, D.I. 254, laying bare the falsity and frivolousness of Kolon's claims.  Kolon and its counsel instead  proceeded with an opposition brief that misstates the law and the facts, including declarations submitted in bad faith in violation of Rule 56(h).

At any point along the way as the evidence mounted, Kolon and its counsel should have dismissed Kolon's claims.  Their continuation can only be attributed to bad faith.

## III.   Kolon Perpetuated Its Strategy To Obstruct And Delay Through Pervasive Discovery Abuses and Misconduct

As if pursuing frivolous claims and destroying evidence were not bad enough, Kolon and its counsel have further compounded the problem by using all manner of obstruction, delay, diversion, and  disingenuousness in an attempt to prevent DuPont and this Court from discovering the truth about its frivolous counterclaims.  Kolon already has been sanctioned twice for its discovery misconduct, D.I. 1249 (No. 3:09-cv-58); D.I. 94, and it continues to engage in obstreperous litigation tactics and material misrepresentations that have unnecessarily multiplied these proceedings.  *See Nat'l Hockey League v. Met. Hockey Club, Inc.*, 427 U.S. 639, 641-42

(1976) (courts look to the full record in assessing dismissal for discovery misconduct).

**A. Kolon and Its Counsel Repeatedly Misrepresented Material Facts Regarding Kolon's Production Capabilities**

Kolon and its counsel have repeatedly misrepresented Kolon's Heracron® production capabilities. Recognizing that Kolon could not claim lost sales without sufficient production capacity to produce additional Heracron® for those sales, Kolon and its counsel have claimed Kolon had excess capacity throughout the relevant time period.[13] Kolon's head of production, Mr. J.T. Park, testified, however, that Kolon had to ███████████████████ ███████████████████████ *See* Ex. 15 at 166:14-21 ("███████████ ███████████████████"); 401:12-18 ( "███████████████ ███████████████████████"). Kolon's contemporaneous business records also show that Kolon ███████████████ ████████████ to willing U.S. customers during the relevant time period.[14]



────────────

[13] *See, e.g.*, Ex. 22, Hr'g Tr. (10/14/09) at 54:23-55:1 (representing to the Court that Kolon had "tremendous excess capacity"); Ex. 4, Kolon's Responses to Dupont's Fourth Set of Interrogatories at 13-16 (vaguely and incompletely setting forth monthly data alleging excess capacity). Mr. Seo's declaration submitted with Kolon's Summary Judgment Opposition violates Rule 56(h). *Compare* D.I. 275, Ex. 24, Seo Declaration at 3-4 (claiming ████████████ ████████████████, based on personal knowledge) *with* Ex. 14 at 36:22-37:22 (disclaiming any knowledge of ██████████████████████████████████ █████████████████)

[14] *See, e.g.*, Ex. 58 ("████████████████████████████████████ ███████████."); Ex. 13 at 56:12-57:1, 134:2-136:10; Ex. 20 (Mr. Kang tells ███████████████████████████████); Ex. 59 (January 29, 2008 email from Juwan Kim to Mitchell asking Mitchell to ████ ████████████████████████████████████████████████ ██████ Mr. Kim also noted that "███████████████████████████ ████████████████████████████████████████"); Ex. 60 (2007 Business Plan), at 284 (noting that Kolon experienced "████████████

(continued...)

**B. Kolon's Counsel Repeatedly Verified False Allegations in Discovery without Conducting the "Reasonable Inquiry" Required by Rule 26(g)**

Kolon's counsel violated Rule 26(g) by signing discovery responses without verifying their accuracy. Indeed, Kolon's counsel engaged in a shell game with respect to the existence of English translations of Kolon's Korean business records. First, on September 2, 2011, Kolon's counsel asked the Court that the parties split the costs for translating Kolon's Korean documents implying that such documents existed. Ex. 62, Sept. 2, 2011 Hr'g Tr. at 44:2-45:12. Second, on September 14, 2011, Kolon's counsel wrote DuPont's counsel and represented: "Kolon has not prepared any English translations of its antitrust documents." Ex. 70, Sept. 14, 2011 Walworth letter. The next day, September 15, 2011, Kolon's counsel admitted to the Court that she had not and did not need to review Kolon's Korean documents. Ex. 2 at 5:16-7:7 This stunning admission revealed the true depth of Kolon's counsel's disregard for their duties and obligation to investigate Kolon's claims and allegations in this case and to ensure those claims and allegations were accurate.

Many of the documents Kolon produced that lay bare the falsity and frivolousness of its claims were in Korean and thus had to be translated for non-Korean speaking U.S. lawyers to review and understand.[15] Yet Kolon's U.S. counsel, *who signed and verified* Kolon's Counterclaim as well as numerous other Court filings and discovery responses, admitted they never reviewed a single Kolon Korean document as of at least September 15, 2011—barely two

---

(continued…)

█████" with respect to Kolon's HP200 (HT) product and a "█████████████████" with respect to its HP300 (HM) product); Ex. 61 (2008 Business Plan), at 198 (noting: "████████ ████████████" According to this document, the "███████████" of these problems are "██████ █████████" and "██████████████████.").

[15] *See, e.g.,* Ex.2, Sept. 15, 2011 Hr'g Tr. 34:18-35:17.

weeks before the close of fact discovery.  See Ex. 2, Sept. 15, 2011 Hr'g Tr. at 5:16-7:7; Ex. 63.

Thus, these attorneys verified Kolon's claims and allegations without personally confirming their

accuracy, which Kolon's own Korean documents repeatedly contradict.

Kolon's counsel willfully violated Rule 26(g).  "The rule requires that every discovery

disclosure, request, response or objection must be signed by at least one attorney of record, or the

client, if unrepresented."  *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 357 (D. Md.

2008) (citing Fed. R. Civ. P. 26(g)(1)).  The court further observed in *Mancia*:

> The signature "certifies that to the best of the person's knowledge, information,
> and belief *formed after a reasonable inquiry*," the disclosure is complete and
> correct, and that the discovery request, response or objection is: (a) consistent
> with the rules of procedure and warranted by existing law (or by a nonfrivolous
> argument for extending, modifying, or reversing existing law, or for establishing
> new law); (b) is not interposed for any improper purpose (such as to harass, cause
> unnecessary delay, or needlessly increase the cost of litigation); and (c) is neither
> unreasonable nor unduly burdensome or expensive, (considering the needs of the
> case, prior discovery in the case, the amount in controversy, and the importance of
> the issues at stake in the action).  Fed. R. Civ. P. 26(g)(1)(A), (B)(i)-(iii)
> (emphasis added).  If a lawyer or party makes a Rule 26(g) certification that
> violates the rule, without substantial justification, the court (on motion, or *sua
> sponte*) must impose an appropriate sanction, which may include an order to pay
> reasonable expenses and attorney's fees, caused by the violation. Fed. R. Civ. P.
> 26(g)(3).

*Id.* (emphasis added).  The Advisory Committee Notes to Rule 26(g) offer important insight into

the intended purpose and application of the Rule—namely, to penalize and deter the sort of

misconduct Kolon's counsel have engaged in here:

> Rule 26(g) is designed to curb discovery abuse by ***explicitly encouraging the
> imposition of sanctions***.... The rule simply requires that the attorney make a
> reasonable inquiry into the ***factual basis*** of his response, request, or objection....
> The duty to make a "reasonable inquiry" is satisfied if the investigation
> undertaken by the attorney and the conclusions drawn there from are reasonable
> under the circumstances.  It is an objective standard similar to the one imposed by
> Rule 11.

Fed. R. Civ. P. 26(g) advisory committee's notes to the 1983 amendments (citations omitted) (emphasis added).[16]

Kolon's counsel could not have conducted a "reasonable inquiry" to determine whether Kolon's claims and contentions in discovery had a legitimate factual basis without reviewing any of Kolon Korean business records revealing the truth  about Kolon's U.S. sales failures.  The attorneys who signed the discovery responses and verified their accuracy bore a personal obligation to conduct a "reasonable inquiry."  *Mancia*, 253 F.R.D. at 357.  Yet they elected not to, instead merely accepting the allegations to be true as written by others based on documents in a foreign language.  Had Kolon's counsel conducted a "reasonable inquiry" and reviewed translations of the Korean business records, they would have learned that Kolon's own documents show its allegations to be false.  *See, e.g., supra*, III.A (misstating capacity in interrogatory response).[17]

### C. Kolon and Its Counsel Repeatedly Engaged in Vexatious Conduct, Needlessly Multiplying the Proceedings and Abusing the Judicial Process in Bad Faith

In addition to misrepresenting the facts, Kolon and its counsel have repeatedly abused the judicial process.  Many of Kolon's improper discovery practices are the subject of motions pending before the Court.  Collectively, these efforts should be seen as part of the overall

---

[16] Rule 3.1 of the Virginia Rules of Professional Conduct similarly provides: "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous...."

[17] Kolon's counsel's failure to review Kolon's Korean business records also further reveals the inadequacy of Kolon's pre-suit investigation under Rule 11, as Rule 11 and Rule 26(g) apply similar requirements.  *Mancia*, 253 F.R.D. at 357-58; Fed. R. Civ. P. 26(g) advisory committee's notes to the 1983 amendments.  The lack of any English translations as late as September 15, 2011, reveals that Kolon's lead counsel in the U.S. had not personally reviewed any of Kolon's Korean business records before filing suit.  Thus, this provides yet another ground for sanctions under Rule 11.

improper strategy and sanctioned accordingly.  For example:

- Even after the Court expressed doubt about the completeness of Kolon's paltry document production, Kolon's counsel repeatedly represented that its production was complete.  Kolon then produced another 105,112 pages (many multiples of the approximately 15,000 pages previously produced) less than two weeks before the close of fact discovery, which contained many documents belying Kolon's antitrust claims and that were responsive to document requests served in 2009.  *See, e.g.*, Ex. 64, at KA00056716 (2007 Heracron Business Plan noting that " ██████████████████ ."); Ex. 40 (Dec. 5, 2008 e-mail from Mr. ██████████ to Mr. Kang noting that " ████████████████████ "); Ex. 20 (Oct. 8, 2008 email in which Mr. Kang responds to ██████████████████ inquiry about whether Kolon's pulp was " ██████████████ ," confirming that Kolon's pulp production was indeed " ████████████████ "); Ex. 30 (Jan. 16, 2008 email from ████████, telling Kolon that " ████████████████████ ").  All these documents, and many more, were produced in the final weeks of fact discovery, months after Kolon insisted its production was complete.

- Kolon's counsel misled this Court and DuPont about its purported efforts to obtain its sales agents' documents, including affirmatively misrepresenting that they had spoken to those individuals months earlier, had "set up a time to meet with them in person," and "had a lawyer physically on site in several locations" to do so, and that the agents had "refused" to produce documents.  D.I. 208 at 3-8.  The agents themselves have testified this was untrue. *Id.*[18]

- Kolon and its counsel disregarded this Court's order to respond by September 30, 2011, to DuPont's Fifth Set of Requests for Admission, which sought discovery regarding Kolon's document preservation efforts and likely spoliation of relevant documents.  D.I. 19 at 2.  Instead, a week after its responses were due, and without any meet-and-confer, Kolon moved for a protective order to avoid responding to these discovery requests.  D.I. 103; D.I. 127 at 4.

- Just days before the scheduled Rule 30(b)(6) deposition of Kolon, it filed a surprise 84-page submission moving to limit the deposition to just four discrete subtopics after agreeing weeks earlier, in writing, that it would produce a witness on at least some 20 noticed subtopics.  D.I. 121; D.I. 163 at 2.

---

[18] The Court also has authority to sanction Kolon's counsel for violating Rule 4.1 of the Virginia Rules of Professional Conduct because they made "a false statement of fact" regarding collecting documents from Kolon's sales agents.

- Kolon's head of Heracron® production, Mr. J.T. Park, was so evasive in his deposition that the Magistrate Judge had to intervene and order him and his counsel to cooperate under threat of sanctions. Ex. 15 at 360:3-8; Ex. 65. This was even after this Court's admonition of such prior misconduct by Kolon's deponents was conveyed to him at the start of the deposition. Ex. 15, Park Dep. 8:21-11:9.

- Kolon produced H.S. Choi as a Rule 30(b)(6) deponent, after previously describing her as a low-level employee with nominal knowledge and experience, who just three years ago worked as an intern at Disney World. D.I. 163 at 26-29. Ms. Choi was unknowledgeable, evasive, and inadequately prepared, and Kolon's counsel persistently and improperly obstructed the deposition. *Id.*

- Kolon noticed a 30(b)(6) deposition relating to competitive intelligence. DuPont prepared and produced a witness at the agreed time and place. Kolon's counsel refused to examine the witness on the 30(b)(6) topics claiming she was unprepared. Ex. 66, Hendren Dep. at 232:2-233:10. Kolon then falsely represented to this Court that DuPont had refused to produce any 30(b)(6) witness. D.I. 178 at p. 6. ("Because DuPont has refused to produce a 30(b)(6) witness *at all*, Kolon requests that the Court issue an order compelling DuPont to produce a witness as soon as possible.")

Realizing its case lacked merit, Kolon and its counsel attempted to expand the case beyond the pleadings rather than dismiss its frivolous claims. For example:

- When DuPont's counsel informed  Kolon that all supply agreements had been produced and they accounted for only about ███ of DuPont's U.S. commercial sales (Ex. 67, Letter from D. Cross to C. Walworth (Aug. 14, 2011), at 4; Ex. 68, Letter from D. Cross to C. Walworth (Aug. 26, 2011); Ex. 69, Reichert Tr. (Apr. 20, 2010) at 196:10-24), Kolon and its counsel filed a motion to compel discovery regarding the other ███ of DuPont's business that had nothing to do with the supply agreements (and could not possibly foreclose sales), arguing that Kolon used the term "supply agreement" "loosely" in its SAC. *See* D.I. 133, 134. Kolon also misrepresented DuPont's production of supply agreements in that motion.

- Kolon expressly represented to the Fourth Circuit that its market definition excludes sales to the U.S. military. *See* Brief of Appellant Kolon Indus. Indus., Inc. No. 10-1103, D.I. 29 at 60 (4th Cir. April 28, 2010). Kolon subsequently issued numerous broad discovery requests for information regarding DuPont's lobbying activities and U.S. military supply obligations. D.I. 59. Kolon then filed a motion to compel this information based on a theory that directly contradicts its SAC. D.I. 139. Kolon's expert has excluded U.S. military sales from his relevant market, yet Kolon has not withdrawn its motion to compel.

At every turn, Kolon and its counsel sought to run up the expenses of DuPont and try to wear down its resolve by filing unnecessary, vexatious motions. For example:

- Kolon moved to compel production of DuPont's sales and financial data *three times*. Ex. 62, Sept. 2, 2011 Hr'g Tr. at 24; D.I. 1506 (No. 3:09-cv-58); D.I. 35; D.I. 146. Denying the second motion, this Court found that Kolon's requests were "exceedingly and improperly broad," unduly burdensome and untimely. D.I. 87 at 3 ¶¶ 10-11. Kolon's expert testified that he received all the information he needed for his analyses and opinions in this case, yet Kolon has not withdraw its motion to compel the information it claimed was essential for its expert's report. Ex. 6 at 91:24-92:15

- Kolon filed a half dozen motions without meeting and conferring with DuPont in violation of Fed. R. Civ. P. 26 and Local Rule 37(E). This was a blatant effort to file unnecessary motions with the Court to run up DuPont's litigation expenses and create delay.[19] As part of its tactic of filing surprise motions, Kolon repeatedly refused to comply with paragraph 11(b) of the Protective Order requiring notice of filing confidential exhibits three days before filing. Kolon's counsel's only explanation was that this Court-ordered requirement is "pointless." Ex. 63, Email from C. Walworth to D. Cross et al. (Oct. 11, 2011)

Kolon's many litigation abuses are strikingly similar to those found in *Metropolitan Opera Ass'n v. Local 100, Hotel Employees and Restaurant Employees Int'l Union*, 212 F.R.D. 178, 231 (S.D.N.Y. 2003), for which the court sanctioned the defendant by entering judgment for the plaintiff and granting it attorneys' fees, *id.* at 221, 224-25. The *Metropolitan Opera* court observed that the combination of outrages perpetuated by the [defendant] and its counsel, both by omission and commission, impels the most severe sanction in order to (1) remedy the effect of the discovery abuses, *viz.*, prejudicing the [plaintiff's] ability to plan and prepare its case, (2) punish the parties responsible, and (3) deter similar conduct by others." *Id.* The court found that

---

[19] Kolon filed the following six motions without complying with its meet-and-confer obligations: (1) Kolon's Motion to Compel Production of Documents from Counter-Defendant DuPont (D.I. 133); (2) Motion for Protective Order to Exclude Discovery Requests That Are Unfounded And Seek to Re-Litigate Spoliation Issues (D.I. 103); (3) Motion to Compel Production of Economic and Financial Data (D.I. 145); (4) Motion to Compel 30(b)(6) Deposition Testimony and Related Third Party Discovery (D.I. 139); (5) Motion for Protective Order Limiting the Scope of DuPont's Rule 30(b)(6) Deposition of Kolon (D.I. 121); and (6) Motion for Sanctions Due to DuPont's Failure to Respond to Kolon's Third Requests for Production of Documents and Kolon's Second Set of Interrogatories (D.I. 171).

the conduct of the defendant and its counsel transcended the normal "hurly-burly" of discovery, into "gross negligence, recklessness, willfulness and lying," and that "it is this qualitatively different conduct that is sanctioned here." *Id.* As in *Metropolitan Opera*, dismissal is necessary here to remedy Kolon's discovery abuses that have prejudiced DuPont's ability to prepare its case, to punish Kolon and its counsel, and to deter similar conduct by others. *Id.*

## CONCLUSION

For the reasons set forth above, DuPont respectfully requests that the Court dismiss

Kolon's antitrust counterclaims with prejudice and award DuPont fees and costs.

Dated: December 30, 2011

Respectfully submitted,

E. I. du Pont de Nemours and Company

By Counsel

Howard Feller (VSB #18248)
hfeller@mcguirewoods.com
Matthew D. Fender (VSB #76717)
mfender@mcguirewoods.com
McGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, VA 23219
Tel:  804-775-1000
Fax:  804-775-1061

– and –

Kent A. Gardiner (*pro hac vice*)
Jeffrey L. Poston (*pro hac vice*)
David Cross (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Tel:  202-624-2500
Fax:  202-628-5116
kgardiner@crowell.com

*Attorneys for Counter-Defendant*
*E. I. du Pont de Nemours and Company*

29

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of December, 2011, I served the foregoing via hand delivery on:

Rhodes B. Ritenour (VSB # 71406)
**LECLAIRRYAN**
Riverfront Plaza, East Tower
951 East Byrd Street, Eighth Floor
Richmond, Virginia 23219
(804) 916-7109
(804) 916-7219 (Fax)
dana.finberg@leclairryan.com
rhodes.ritenour@leclairryan.com

Carla Walworth (*pro hac vice*)
Dan Goldman (*pro hac vice*)
PAUL, HASTINGS, JANOFSKY
& WALKER LLP
Park Avenue Tower
75 E. 55th Street
New York, New York  10022
(212) 318-6000
(212) 319-4090 (Fax)
victoriacundiff@paulhastings.com
carlawalworth@paulhastings.com

*Attorneys for Kolon Industries, Inc.*


E. I. du Pont de Nemours and Company

By Counsel

Howard Feller (VSB #18248)
hfeller@mcguirewoods.com
Matthew D. Fender (VSB #76717)
mfender@mcguirewoods.com
McGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, VA 23219
Tel:  804-775-1000
Fax:  804-775-1061