

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

KOLON INDUSTRIES, INC.,

     Plaintiff,

v.                           Civil Action No. 3:11cv622

E.I. DU PONT DE NEMOURS
AND COMPANY,

     Defendant.

### MEMORANDUM OPINION

This matter is before the Court on Kolon's MOTION FOR RECUSAL AND DISQUALIFICATION (Docket No. 247). For the reasons set forth below, the motion will be denied.

### PROCEDURAL HISTORY

On February 3, 2009, E.I. du Pont Nemours and Company ("DuPont") filed a Complaint against Kolon Industries, Inc. ("Kolon") claiming, <u>inter alia</u>, that Kolon had "engaged in concerted and persistent actions to wrongfully obtain DuPont's trade secrets and confidential information about [DuPont's] KEVLAR [] aramid fiber." Compl. ¶ 1. DuPont also alleged claims for conspiracy, business torts, and conversion. All claims, but the trade secret misappropriation claim, were dismissed either voluntarily by DuPont before trial or upon motion by Kolon before

the case was submitted to the jury. Thus, hereafter, the action by DuPont will be referred to as the "Trade Secrets Case."

On April 20, 2009, Kolon filed its ANSWER and a COUNTERCLAIM alleging that DuPont had violated Section 2 of the Sherman Act, 15 U.S.C. § 2, by engaging in anticompetitive activity, attempted monopolization and monopolization. See Defs.' Answer at 35. DuPont filed a MOTION TO DISMISS the antitrust counterclaim which was granted, with leave to amend. On August 25, 2009, Kolon filed its AMENDED COUNTERCLAIM (Docket No. 50); and on August 31, 2009, Kolon filed its SECOND AMENDED COUNTERCLAIM ("SACC") (Docket No. 59) which was dismissed, again for failing to state a claim, but also with leave to amend (Docket No. 100).

Kolon declined to further amend the counterclaim and, after the Court entered an Order under Fed. R. Civ. P. 54(b), Kolon appealed the dismissal of the counterclaim. On March 11, 2011, the United States Court of Appeals for the Fourth Circuit reversed the dismissal, holding that Kolon adequately had pled antitrust claims of monopolization and attempted monopolization. E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc., 637 F.3d 435 (4th Cir. 2011). The counterclaim will be referred to as the "Antitrust Case."

While the Antitrust Case was on appeal, the Trade Secrets Case was set for trial and extensive discovery was conducted by

2

both sides. The discovery cut-off was set for May 14, 2010 and the case was set to be tried beginning November 3, 2010. Late in the discovery period, DuPont asserted that Kolon had engaged in substantial spoliation of evidence. Thus, the trial set for November 3, 2010 had to be delayed until discovery respecting spoliation had taken place and the spoliation issue was resolved. See MEMORANDUM OPINION and ORDER dated July 21, 2011 (3:09cv58, Docket Nos. 1249 and 1250).

On November 11, 2010, the Trade Secrets Case was set for trial on May 23, 2011 and a schedule was set for pretrial activities to ready the Trade Secrets Case for trial. (Electronic Docket Entry No. 705 as confirmed by Docket No. 745). Because the parties filed a virtually unprecedented number of motions *in limine* and other pretrial motions, the Court found it necessary sua sponte to continue the trial so that the motions could be resolved. Ultimately, the trial of the Trade Secrets Case began on July 21, 2011.

In the Trade Secrets Case, Kolon contended, inter alia, that DuPont had waived the secrecy of some of the trade secrets at issue in that case by offering documents and testimony about those secrets in another case without placing the documents under seal and, in some cases, by agreement to remove them from the confidential status which they had been afforded under a

3

protective order.  The other case was Akzo N.V. v. E.I. du Pont de Nemours and Co., 635 F. Supp. 1336 (E.D. Va. 1986) (hereafter the "Akzo Case").  In the Trade Secrets Case, DuPont moved to preclude evidence from the Akzo Case (3:09cv58, Docket No. 431). Kolon filed a reciprocal motion seeking to foreclose DuPont from claiming that it had not waived secrecy in the Akzo Case.  KOLON INDUSTRIES, INC'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF THE CONFIDENTIALITY OF CERTAIN AKZO DOCUMENTS (3:09cv58, Docket No. 947).  Kolon also asserted the same points in its motion for summary judgment in the Trade Secrets Case.  KOLON INDUSTRIES, INC.'S MOTION FOR SUMMARY JUDGMENT (3:09cv58, Docket No. 379).

In all of those motions, Kolon asserted that DuPont had waived secrecy in the Akzo Case.  Kolon argued that certain statements made by a partner in McGuireWoods evinced the waiver of some of the secrets at issue in the Trade Secrets Case.  Those motions were filed, briefed and decided during the time from August 30, 2010 to May 16, 2011.

In the Akzo Case, Akzo, one of DuPont's competitors in the para-aramid field, sued DuPont for patent infringement.  DuPont filed a Counterclaim seeking to have Akzo's patent declared invalid.  The late Honorable Richard L. Williams, sitting without a jury, presided over the Akzo Case from May 6, 1985 to May 23, 1986, and judgment was entered against Akzo.  Akzo N.V. v. E.I.

4

du Pont de Nemours and Co., 336 F. Supp. at 1352-56.  DuPont was

represented  in  the  Akzo  Case  by  the  New  York  law  firm,

Fitzpatrick,  Cella,  Harper  &  Scinto  ("FitzpatrickCella"),  and

McGuire  Woods  &  Battle  (now  "McGuireWoods").     It  is  public

knowledge that, during the 1980s, the undersigned presiding judge

("presiding judge") was a partner in McGuireWoods.

     In  the  Trade  Secrets  Case,  Kolon  sought  discovery  of

documents filed in the Akzo Case.  The Court files contained no

meaningful  documents.     McGuireWoods  advised  that  it  had  no

documents  from  the  Akzo  Case  and  FitzpatrickCella  advised

McGuireWoods that it had no files from the Akzo Case.  However,

after  the  close  of  discovery,  Kolon  issued  a  subpoena  to

FitzpatrickCella   for   documents   in   the   Akzo   Case.

FitzpatrickCella determined that, in fact, it had a number of

files from the Akzo Case, most of which were privileged.

     In   August   2010,   the   Court   required   DuPont   and

FitzpatrickCella  to  review  those  files,  to  produce  responsive

documents or to file objections, and to serve a privilege log for

any privileged documents.   On August 17, 2010, DuPont produced

about  30  boxes  of  documents,  objected  to  producing  other

documents,  and  served  a  privilege  log.    (3:09cv58,  Docket  No.

409).  An entry in the privilege log reflected that the presiding

judge had sent to Mr. Fitzpatrick a copy of the Complaint filed by Akzo in the Akzo Case.

In the Trade Secrets Case, the motion *in limine* filed by DuPont (3:09cv58, Docket No. 431) was granted by ORDER entered on May 16, 2011 (3:09cv58, Docket No. 1146). The motion *in limine* filed by Kolon (3:09cv58, Docket No. 947) was denied by ORDER entered on March 23, 2011 (3:09cv58, Docket No. 961); and Kolon's motion for summary judgment (3:09cv58, Docket No. 379) was denied by ORDERS entered on September 23, 2010 (3:09cv58, Docket No. 607) and February 11, 2011 (3:09cv58, Docket No. 867).

On July 20, 2011, the day before jury selection in the Trade Secrets Case, Kolon filed its opposition memorandum to an instruction proposed by DuPont (3:09cv58, Docket No. 1247). In that memorandum, Kolon stated that it was:

> compelled to point out that there is some question whether Your Honor should be adjudicating these matters. The claim of privilege asserted by DuPont's counsel apparently is one that arises . . . in the 1985-86 time frame, a time when Your Honor was a partner in that firm [McGuireWoods] . . . . Documents produced by DuPont from the files of Fitzpatrick Cella include at least one document indicating a role by Your Honor in the earliest stage of the Akzo litigation, although the extent of that role remains unknown.

6

Id. at 8 (emphasis added).[1]

On July 22, 2011, counsel were convened in a telephone conference to discuss a number of matters about the forthcoming trial.   In that conference, counsel for Kolon was asked by the Court to explain the above-quoted, terse reference in the brief filed on July 20.   Kolon's counsel explained that the reference was to the May 9, 1985 letter from Mr. Fitzpatrick to the presiding judge.   This was the first time that the presiding judge was made aware of Mr. Fitzpatrick's letter.

Subsequently, the documents listed in that entry were produced.   The first document was a letter dated May 9, 1985 from Mr. Fitzpatrick at FitzpatrickCella to the presiding judge confirming a telephone conference in which Mr. Fitzpatrick had asked for a copy of Akzo's Complaint.   The letter from Mr. Fitzpatrick to the presiding judge, in pertinent part, reads as follows:

> Dear Mr. Payne:
>
> > Confirming our telephone conversation, I would appreciate your telecopying the Complaint directly to our office, as well as to each of the following persons as soon as possible.

---

[1]   The last quoted sentence suggests that there were other such documents.   However, Kolon has neither identified nor produced any such documents.

7

(Docket No. 248, Exhibit 23 at 3).[2]  The second document was a
facsimile cover sheet to FitzpatrickCella also dated May 9, 1985
to which was attached Akzo's Complaint which had been filed May
6, 1985.  Id.

During further inquiry into the matter, Kolon's counsel
represented that they had reviewed all the non-privileged
documents from the 30 boxes of FitzpatrickCella files which had
been produced and that none of those documents reflected the name
of the presiding judge.  July 22, 2011 Tr. 20.  DuPont's counsel
represented that they had reviewed the privileged documents in
the FitzpatrickCella files and that the privileged documents did
not mention the presiding judge.  Id. at 19.

Argument and presentation of evidence in the Trade Secrets
Case began on July 25.  While the trial was underway, DuPont's
counsel, at the Court's direction, reviewed some 588 more boxes
of files from the archives of FitzpatrickCella and reported that
the letter from Mr. Fitzpatrick to the undersigned was the only
document in those files containing the name or initials of the
undersigned.  The telecopy cover sheet forwarding the Akzo
Complaint did not mention the presiding judge.

---

[2]  The letter also supplied the names and addresses of other
lawyers to whom a copy of Akzo's Complaint should be sent.

8

Having seen those two documents (the Fitzpatrick letter and the response telecopy), the presiding judge advised counsel that, "[h]aving reviewed those documents, I have no collection [sic] of having had a conversation with Mr. Cella or Mr. Fitzpatrick. I still don't. And I have no recollection of forwarding the Complaint to him, nor does it prompt in my mind any recollection of any involvement in this litigation." July 27, 2011 Tr. 419.

Thereafter, Kolon said nothing further respecting the matter. Kolon's objection to the instruction proposed by DuPont was overruled. Proceedings in the Trade Secrets Case continued, with the jury returning a verdict after a seven week trial.

Meanwhile, the Antitrust Case was proceeding as well. After the Fourth Circuit reversed the dismissal of the Antitrust Case on March 11, 2011, it was remanded and counsel were given a trial date of March 2, 2012 and were asked to agree upon a discovery order and pretrial schedule (the "Stipulated Schedule"). That was filed on April 28, 2011 (3:09cv58, Docket No. 1125). September 30, 2011 was set as the closing date for fact discovery, and expert discovery was set to close on November 21, 2011. The Stipulated Schedule was amended slightly by the Court. It was not entered until July 8, 2011 (3:09cv58, Docket No. 1219), but meanwhile the parties proceeded with discovery as outlined in the Stipulated Schedule that was submitted on April

28, 2011. By subsequent stipulated amendment entered on October 4, 2011 (Docket No. 95),[3] the trial date was moved to April 4, 2012; the time for taking certain depositions was extended to October 31, 2011; and the time for completion of expert discovery was extended to January 6, 2012.

Since April 28, 2011, discovery in the Antitrust Case has proceeded on the Stipulated Schedule. As a part of Kolon's discovery, it sought documents and depositions about the patent litigation in the Akzo Case and about what was described generally as other patent infringement litigation between DuPont and Akzo in the mid-1980's in Delaware, Germany, Japan and Great Britain.[4] The record does not reflect the identities of the law firms representing DuPont in those actions, but it appears, from the record, that McGuireWoods served as counsel only in the Akzo Case and was not otherwise involved in any of the other litigation between Akzo and Dupont.

---

[3] On September 21, 2011, for administrative convenience, and because the trial of the Trade Secrets Case had concluded (post-trial motions were still pending), the Antitrust Case was restyled Kolon Industries, Inc. v. E.I. du Pont de Nemours and Co., and given a new civil action number (C.A. 3:11cv622). A new docket numbering system was initiated with the redesignation Order as Docket No. 1.

[4] DuPont also filed a trade dispute action in the International Trade Commission. Kolon sought discovery about that matter. Motions respecting that requested discovery have been held in abeyance pending resolution of the recusal motion.

In the Antitrust Case, DuPont objected, inter alia, to Kolon's proposed discovery of its files in the Akzo Case as well as the patent litigation between DuPont and Akzo in Delaware, Germany, Japan, and Great Britain. Kolon then issued subpoenas to non-parties and also sought a deposition from DuPont under Fed. R. Civ. P. 30(b)(6) respecting, inter alia "DuPont's patent litigations with Akzo." On September 26, 2011, DuPont filed DUPONT'S MOTION FOR PROTECTIVE ORDER REGARDING KOLON'S RULE 30(b)(6) DEPOSITION NOTICE AND THIRD PARTY SUBPOENAS ("MOTION FOR PROTECTIVE ORDER") (Docket No. 59; the accompanying brief is Docket No. 60). On October 17, 2011, Kolon filed KOLON'S MOTION TO COMPEL 30(b)(6) DEPOSITION TESTIMONY FROM DUPONT AND RELATED THIRD PARTY DISCOVERY (Docket No. 139; the accompanying brief is Docket No. 140). In sum, the parties filed reciprocal motions.

Then, on November 30, 2011, Kolon filed this motion for recusal. By then, all fact discovery had been concluded in the Antitrust Case,[5] except such as might be required as a result of twelve then-pending discovery motions.[6] Summary judgment motions

---

[5] And, the trial of the Trade Secrets Case had been concluded, judgment had been entered on the verdict, and proceedings were underway on several post-trial motions.

[6] Decision on those twelve motions, as well as four subsequently filed motions, was held in abeyance pending resolution of the recusal motion.

11

were due on December 2, 2011 and, given that voluminous motions were filed then, they no doubt were in the final stages of preparation well before then.

The foregoing facts form the basic context for the assessment of Kolon's motion for recusal. Other facts will be found in the discussion of the analytical component to which they relate.

Kolon's motion relies on the provisions of 28 U.S.C. § 455(b)(2), 28 U.S.C. § 455(a), and Canon 3 of The Code of Conduct for United States Judges. DuPont first argues that the recusal motion is untimely. It then responds to Kolon's arguments respecting § 455(b)(2), § 455(a), and Canon 3.

## DISCUSSION

### 1. Section 455: General

The federal standards governing recusal of federal judges are found in 28 U.S.C. §§ 455 and 144.[7] In 1974, Congress amended § 455 in order to promote "public confidence" in the judiciary and make "the statutory grounds for disqualification of a judge . . . conform generally with the . . . canons of the Code

---

[7]    Section 144 applies only to district judges and requires recusal "whenever a party" in a district court "files a timely and sufficient affidavit" demonstrating that the presiding judge has a "personal bias or prejudice" against or in favor of a party.    Kolon has not moved for recusal under § 144, and that statute is not at issue here.

of Judicial Conduct." H.R. Rep. No. 93-1453 (Oct. 9, 1974). Section 455(a), in its current form, provides that: "any justice, judge, or magistrate [magistrate judge] of the United States shall disqualify himself in any proceeding in which his impartiality may reasonably be questioned." Such a circumstance "is established when a reasonable person, knowing the relevant facts, would expect that a justice, judge, or magistrate knew of circumstances creating an appearance of partiality." Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 850 (1988) (affirming the Fifth Circuit's decision and interpretation in Health Servs. Acquisition Corp. v. Liljeberg, 796 F.2d 796 (5th Cir. 1986)).

Under 28 U.S.C. § 455(b)(2), a judge is required to recuse himself "[w]here in private practice he served as a lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it." And, under § 455(e), "no justice, judge, or magistrate judge shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b). Where the ground for disqualification arises only under subsection (a), waiver may be

13

accepted provided it is preceded by a full disclosure on the record of the basis for disqualification." (emphasis added).

Although the 1974 revisions to § 455 broadened the standard for recusal, Congress emphasized that those standards did not permit recusal unless the parties presented a reasonable basis for disqualification. H.R. Rep. No. 93-1453 (Oct. 9, 1974). In that regard, the report advised that "[E]ach judge must be alert to the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision . . . [l]itigants . . . are not entitled to judges of their own choice." Id.

## 2. Timeliness of the Motion

DuPont argues first that the recusal motion should be denied because it was not timely made. Kolon takes the view that § 455(b) does not include a timeliness requirement, and that, because § 455(e) prohibits a judge from "accepting from the parties" a waiver of the grounds for disqualification, a timeliness requirement would be tantamount to a waiver. Kolon did not address directly whether a motion based on § 455(a) or Canon 3 is subject to a timeliness requirement, but in its discussion of Fourth Circuit decisional law on timeliness, Kolon implicitly acknowledges that such a requirement exists with respect to § 455(a). Kolon also contends that, in any event, its

14

motion for recusal was timely, and that it waited so long to bring it because the issue was not ripe until DuPont filed its MOTION FOR PROTECTIVE ORDER on September 26, 2011 (Docket No. 59). Mem. Supp. Motion for Recusal at 26.

The language of § 455 is silent on the issue of timeliness. However, the majority of circuits, including the First, Second, Third, Fourth, Fifth, Eighth, Ninth, Eleventh, and Federal Circuits have found that timeliness is a requirement when recusal is sought under § 455. See, e.g. Ogala Sioux Tribe v. Homestake Min. Co., 722 F.2d 1407, 1414 (1st Cir. 1983) (finding that a timeliness requirement applies to both §§ 455(a) and 455(b)); In re International Business Machines Corp., 618 F.2d 923, 928, 932 (2d Cir. 1980) (noting and expressing approval of previous case law interpreting § 455 as requiring timeliness); Stone Hedge Properties v. Phoenix Capital Corp., Nos. 02-3869, 02-4032, 2003 WL 21796551, at *2-3 (3d Cir. 2003) (unpublished opinion) (finding that "settled authority" established a timeliness requirement under both §§ 455(a) and 455(b), citing to cases in the Second, Third, Fourth, Fifth, Eighth, and Ninth Circuits); United States v. Owens, 902 F.2d 1154, 1155 (4th Cir. 1990) (quoting Satterfield v. Edenton-Chowan Bd. Of Ed., 530 F.2d 567, 574-75 (4th Cir. 1975) for the proposition that "timeliness [is] required in all recusal contexts"); United States v. York, 888

F.2d 1050 (5th Cir. 1989) (finding a timeliness requirement under both sections and noting that Congress understood that the "'judicial gloss' on the former section 455 would be preserved and that a timeliness requirement was implicit"); In re Kansas Pub. Employees Sys., 85 F.3d 1353, 1360 (8th Cir. 1996) ("[C]laims under § 455 will not be considered unless timely made."); United States v. Conforte, 624 F.2d 869, 879-80 (9th Cir. 1980) (finding a timeliness requirement in § 455); Summers v. Singletary, 119 F.3d 917, 920 (11th Cir. 1997) ("[T]imeliness is a component of § 455(b)"); Polaroid Corp. v. Eastman Kodak Co., 867 F.2d 1415, 1418 (Fed. Cir. 1989) (finding that timeliness is one "factor" to be considered in the § 455 analysis).[8]

Contrary to Kolon's contention, timeliness is a requirement under § 455(b) in the Fourth Circuit. United States v. Owens, 902 F.2d at 1155-57. Kolon attempts to distinguish Owens by arguing that it addresses only § 455(a). That argument misapprehends Owens because, although the defendant in Owens did

---

[8]  Although the opinion is unpublished, and thus not binding as precedent, the Seventh Circuit also has acknowledged that "some degree of timeliness is required" under § 455(b) in United States v. Lampe, 1996 U.S. App. LEXIS 26177, at *9 (7th Cir. 1996)(unpublished). The Lampe decision, along with the other cited decisions, provides a useful analytical tool when evaluating the timeliness requirement.

not specify which part of § 455 required recusal, the facts that
formed the basis of his recusal motion fall squarely within §
455(b)(1).[9]   Moreover, in Owens, the Fourth Circuit clearly
explained that timeliness was required for all recusal motions,
not just those falling under § 455(a).   902 F.2d 1154, 1155 (4th
Cir. 1990).   The Court took the view that promptness in filing
recusal motions is necessary to prevent parties from holding back
information relevant to recusal with the purpose of determining
whether the presiding judge treats them the way that they want to
be treated.   See id. at 1156 (quoting In re Machinery Corp., 276
F.2d 77, 79 (1st Cir. 1960)).   To avoid this circumstance and the
corresponding waste of resources (of the parties and the
judiciary) and the unfairness (to the other party) that such
waste entails, the Fourth Circuit requires the movant "to raise
the disqualification of the trier . . . at the earliest moment
after knowledge of the facts."   Satterfield v. Edenton-Chowan Bd.
of Educ., 530 F.2d 567, 574 (4th Cir. 1975).   That fundamental
rationale applies equally to both §§ 455(a) and 455(b).[10]

---

[9]   Section 455(b)(1) requires recusal when a judge "has a
personal bias or prejudice concerning a party, or personal
knowledge of disputed evidentiary facts concerning the
proceeding."

[10]   See also United States v. Taggart, 983 F.2d 1059, No. 92-
6468, 1993 WL 10876, at *3-4 (4th Cir. Jan. 21, 1993)
(unpublished) (holding that a recusal motion brought under both

17

Kolon's argument concerning waiver under § 455(e) is also without merit. To begin, it is widely accepted that timeliness and waiver are two distinctly different issues. See United States v. York, 888 F.2d 1050, 1055 (5th Cir. 1989) (observing "that waiver and timeliness are distinct issues"); United States v. Bayless, 201 F.3d 116, 127 (2d Cir. 2000) ("Waiver is a renunciation . . . of the right to seek recusal . . . [u]ntimeliness, on the other hand, is merely a failure to seek recusal when it should have been sought); Summers v. Singletary, 119 F.3d 917, 921 (11th Cir. 1997) (noting the persuasiveness of York's analysis on the waiver and timeliness distinction); Stone Hedge Properties v. Phoenix Capital Corp., Nos. 02-3869, 02-4032, 2003 WL 21796551, at *2-3 (3d Cir. 2003) (same); see also United States v. Olano, 507 U.S. 725, 733 (1993) (emphasizing the difference between "forfeiting" a claim, by not timely asserting it, and "waiving" a claim, by intentionally relinquishing it and extinguishing the right to raise it). These decisions, standing alone, dispose of Kolon's theory that there is no distinction between timeliness and waiver.

---

§§ 455(a) and 455(b)(1) was untimely); United States v. Sarno, 41 F. App'x 603, 608-09 (4th Cir. 2002)(unpublished) (holding that a recusal motion under § 455(b)(5)(ii) was without merit, in part because of its untimeliness). Unpublished opinions are not of precedential effect, but they can be useful analytical tools.

That distinction, of course, is obvious from the text of § 455(e) which does not address timeliness but, instead, forecloses the ability of a judge to "accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b)," while allowing a judge to accept a waiver of a ground arising under subsection (a). Here, no party has asked the Court to waive any ground for disqualification in subsection (b) or in any other statute. Thus, by its terms, § 455(e) is not implicated here.

Moreover, Kolon's argument that the waiver prohibition forecloses a timeliness requirement ignores the statutory text of subsection (a) and the entirely different purposes served by the distinctly different concepts of the timeliness requirement and the waiver provision. To read § 455(e) as Kolon urges would frustrate the very purpose of a timeliness requirement and allow a party, with knowledge of a disqualifying circumstance, to lay in wait and spring the trap when doing so would provide a strategic advantage. Such a rule would foster great mischief.[11]

---

[11] E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1295 (9th Cir. 1992) (holding that a recusal motion was untimely and noting that, without a timeliness requirement, parties would be encouraged "to withhold recusal motions, pending a resolution of their dispute on the merits, and then if necessary invoke section 455 in order to get a second bite at the apple"); see also Belue v. Leventhal, 640 F.3d 567, 574 (4th Cir. 2011) (noting that

Further, the result of such a rule would lead to the waste of party and judicial resources and to prejudice and unfairness to the adverse party.

Finally, to adopt Kolon's view of § 455(e) would be to ignore the well-considered opinions that reflect the decisions of every circuit to have considered the issue and that distinguish between waiver and timeliness. The Court declines the invitation to take that course.

Thus, the question to be decided is whether Kolon's motion is timely. It is not.

It was public knowledge when DuPont filed this case that the presiding judge had been a partner in McGuireWoods in the 1980's. And, after DuPont filed its Complaint, the Clerk's Office issued a notice (that is part of the electronic case file) which put counsel on notice of that fact as well.

Kolon has long known that Akzo sued DuPont in 1985 in this Court. The record is clear that Kolon scoured court records, including the judicial archives, for information about that case. Thus, Kolon has long known that McGuireWoods and FitzpatrickCella represented DuPont in the Akzo Case. In August 2010, Kolon received documents from FitzpatrickCella and the privilege log

---

recusal motions should not be "a form of brushback pitch for litigants to hurl at judges who do not rule in their favor").

20

respecting those documents.   An entry in that privilege log revealed the facsimile containing the Akzo Complaint and that it was sent by the presiding judge.

Kolon first requested discovery about the Akzo Case in the Trade Secrets Case in August of 2009.   See Mem. Opp. DuPont's Motion in Limine to Preclude Kolon from Presenting Evidence at 4 (3:09cv58, Docket No. 515).   The parties thereafter sparred over that discovery, and from August 2010 through May 2011, the parties litigated about whether statements made by a McGuireWoods partner in the Akzo Case evinced a waiver of secrecy of certain trade secrets at issue in the Trade Secrets Case.   That issue was thoroughly briefed by the parties in the Trade Secrets Case during that period (3:09cv58, Docket Nos. 431, 432, 515, 539, 765, 782, 791, 947, 976, 1003), culminating in Orders issued on March 23, 2011 (3:09cv58, Docket No. 961) and on May 16, 2011 (3:09cv58, Docket No. 1146).

All the while, Kolon knew that the presiding judge had been a partner in McGuireWoods in 1985 to 1986 when the Akzo Case was pending.   And, it knew about the letter from Mr. Fitzpatrick to the presiding judge and the entry in the privilege log.[12]

---

[12] In fact, Kolon listed that communication as one of its trial exhibits in the Trade Secrets Case (filed on April 11, 2011) (3:09cv58, Docket No. 1044 at 103, DX 5092).

In sum, before the trial in the Trade Secrets Case began on July 21, 2011, Kolon knew every fact on which it now predicates its recusal motion. In fact, the record clearly reflects that Kolon knew those facts as of the date of its receipt of the privilege log in August 2010.

Kolon, however, did not move for recusal. Rather, in a brief addressing a jury instruction filed on July 20, 2011, Kolon made an oblique comment about whether the presiding judge "should be adjudicating these matters." Kolon did not articulate what it meant by "these matters," but the context shows that the words referred to the issue whether an adverse inference should be drawn from the testimony of Edwin Schulz, a Kolon consultant, when he claimed a Fifth Amendment privilege rather than answering questions posed by Dupont's counsel.

On July 22, 2011, the Court asked Kolon's counsel what it intended by the reference in that brief. Kolon's counsel said that the comment was based on the entry in the privilege log, which contained the transmittal sent by the presiding judge to FitzpatrickCella with the Complaint attached. July 22, 2011 Tr. 16. Kolon's counsel went on to state that it had received the document "months ago," but had not raised the issue because "getting that document was not something that, in my mind, would trigger, you know, any bias or anything like that." Id. at 17.

22

Nonetheless, DuPont was ordered to conduct an expedited review of the company and law firm billing records to determine if there was any other reference to the presiding judge. That was because, as the parties were told, the presiding judge has no recollection that he did any work on the Akzo Case and did not remember any request made by Mr. Fitzpatrick or sending a copy of Akzo's Complaint to him. But, in an abundance of caution, it was thought best to have the records reviewed to see if those recollections about a 25 year old case may have been in error.

The search of those records produced no new information. And, Kolon's counsel was informed by DuPont's counsel that the one document (the Fitzpatrick letter) identified earlier (3:09cv58, Docket No. 1044 at 103, DX 5092) was the only document referring to the presiding judge. The response to that letter was a cover sheet and a copy of the Akzo Complaint, but it did not mention the presiding judge. Thereafter, Kolon appeared satisfied and said no more. The trial of the Trade Secrets Case went forward to verdict and then into post-judgment proceedings. Those proceedings include DuPont's request for an injunction the effect of which, says Kolon, would be to put it out of business.[13]

---

[13] Kolon did not file a motion for recusal in the Trade Secrets Case when it filed its November 30, 2011 motion in the Antitrust

Nor did Kolon raise the issue at any time after the Antitrust Case returned from the Court of Appeals, was set on a discovery and trial schedule in April 2011, and proceeded with discovery from then until the end of October 2011, the discovery cutoff.  In those intervening months, Kolon and DuPont have had, and have briefed (or have written letters about), many discovery disputes in the Antitrust Case which the Court has adjudicated.

Although fully knowledgeable of the facts that it now claims warrant recusal, Kolon said nothing.   Indeed, even after it received on September 26, 2011, DUPONT'S MOTION FOR PROTECTIVE ORDER REGARDING KOLON'S RULE 30(b)(6) DEPOSITION NOTICE AND THIRD PARTY SUBPOENAS (Docket No. 59),[14] the motion which Kolon contends ripened the recusal issue in this case, Kolon said nothing.  Briefing was expedited on DuPont's motion (Docket No. 69).  A hearing was held on September 30, 2011, and because the briefs did not fully address the issues, further briefing was ordered.   Kolon filed a mirror image cross-motion on the issue (Docket No. 139) and briefing on it was concluded by November 7,

---

Case.  It referred to recusal in the Trade Secrets Case in its recusal briefs in the Antitrust Case and in several post-judgment briefs in the Trade Secret Case.   However, it did not file a recusal motion in the Trade Secrets Case until January 27, 2012. That motion will be resolved in a separate opinion.

[14] The Docket Number is the new numbering system in the Antitrust Case, Kolon Industries, Inc. v. E.I. du Pont de Nemours and Company, Civil Action No. 3:11cv622.

2011. DuPont then filed another related motion for protective order (Docket No. 167) on which briefing was completed on October 31, 2011. In none of its papers did Kolon seek, or even mention, recusal.

Then, on November 30, 2011, Kolon filed this motion. On this record, the motion simply is too late.

Kolon seeks to avoid that obvious and necessary consequence by arguing that the issue of recusal only ripened because of DuPont's motion for protective order asking for an order precluding discovery into all the litigation between Akzo and Dupont, including the Akzo Case. That, says Kolon, is when the Akzo litigation became a matter in controversy. The so-called triggering motion was filed on September 26, 2011, two months before Kolon filed the recusal motion.

This belatedly asserted predicate of timeliness is without merit. As Kolon itself acknowledges, DuPont and Kolon have been at odds over the discovery into the Akzo litigation, including the Akzo Case, since at least August of 2010, or as Kolon puts it, since "the early stages of the litigation." Reply Mem. Supp. Motion for Recusal at 18.[15] In fact, the parties have really

---

[15] For example, when the Court asked both parties to submit their Second Requests for Production of Documents in the Antitrust Case on September 1, 2011, Kolon submitted its filing dated August 25, 2009 in which it asked for "all pleadings, motions and filings

been at odds over this discovery since August of 2009 when Kolon raised it in the Trade Secrets Case.

And, counsel for Kolon admitted that the ground Kolon now asserts is its basis for recusal – the Complaint forwarded by the presiding judge to Mr. Fitzpatrick – did not present any issue of bias. Counsel for Kolon explained that, even though he had known about the transmission of the Complaint for months, he had not brought it to the Court's attention because it did not trigger any bias in his mind. July 22, 2011 Tr. at 17. Kolon represented that its concern was that this facsimile did not constitute the only involvement of the presiding judge in the Akzo Case. Thus, with the Court's approval and at its direction, DuPont and Kolon conducted a search through all the documents related to that litigation. The search ultimately unearthed not a shred of new evidence linking the presiding judge to the Akzo Case. Having found no evidence aside from the document Kolon had already decided did not implicate bias (a document that it had held knowledge of since August of 2010), Kolon appeared satisfied, and the proceedings continued.

It is unclear what precisely prompted Kolon belatedly to come to a contrary view on November 30, 2011. Perhaps, it was

with the court, and any settlement agreement relating to your patent litigations with Akzo." Second Request for Production of Documents ¶ 13.

that Kolon regarded as persuasive the briefs filed by DuPont addressing its motion for protective order.  Or, perhaps, it was that Kolon apprehended that it was facing a serious prospect that an injunction might be issued in the Trade Secrets Case.  Given Kolon's terse, but repeated, suggestions in its recusal papers in this case about vacatur of orders in the Trade Secrets Case, it may be that Kolon has had second thoughts about whether it should have moved for recusal in 2010.  It really makes no difference because DuPont's motion for protective order simply was not an event that suddenly made ripe an issue the pertinent facts of which Kolon had known for over a year and about which the parties had sparred and litigated for many months before that motion was filed.[16]

Having concluded that the motion for recusal is untimely, it perhaps is not necessary to consider the merits of the motion. And, indeed, generally, it is preferable to articulate a single basis for decision and, conversely, to refrain from making alternative holdings.  Karsten v. Kaiser Found. Health Plan of the Middle Atlantic States, Inc., 36 F.3d 8, 11 (4th Cir. 1994).

---

[16]   Kolon's unusual "triggering event theory" cannot rescue its dilatory conduct for an additional reason.   Kolon, with full knowledge of the allegedly disqualifying information for a year or more, waited two more months after the putative "triggering event" before raising recusal. Under the circumstances, there is no valid reason for waiting two months to file a recusal motion. That too renders its motion untimely.

However, considering the nature of the recusal issue, it seems preferable here also to address the merits of the issue.

Kolon's motion is based principally on § 455(b)(2), but it also invokes § 455(a) and, derivatively, Canon 3 of the Code of Conduct for United States Judges. The discussion will proceed in that order.

### 3. Section 455(b)(2)

The statute provides that a judge must recuse himself from presiding over a case "[w]here in private practice he served as a lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter or such lawyer has been a material witness concerning it [the matter in controversy]." 28 U.S.C. § 455(b)(2). Kolon argues that § 455(b)(2) requires recusal here because two of the presiding judge's former law partners represented DuPont in the Akzo Case and because the presiding judge was a partner at McGuireWoods when those partners represented DuPont in that case. Kolon takes the view that evidence concerning the Akzo Case may be relevant in this case. Mem. Supp. Motion for Recusal at 16.

It is Kolon's burden, as the party moving for recusal under § 455(b), to demonstrate that the presiding judge or one of his former law partners "served in the matter in controversy." See

28

United States v. DeTemple, 162 F.3d 279 (4th Cir. 1998) (dismissing the defendant's § 455(b) argument after noting that he had failed to show that the judge's former law partners or the judge himself served in the "matter in controversy"). Kolon has not met that burden. Thus, even if Kolon's motion were timely (which it is not), recusal would not be warranted under § 455(b)(2) because neither the presiding judge nor his former law partners served as a lawyer concerning the "matter in controversy" in this case.

Kolon primarily relies on In re Rodgers, 537 F.2d 1196, 1197-98 (4th Cir. 1976) and United States v. DeTemple, 162 F.3d 279 (4th Cir. 1998). In Rodgers, the defendants were charged with violating mail fraud and anti-racketeering statutes. 537 F.2d at 1197. One of the presiding judge's former law partners had represented the owners of Pimlico racetrack in formulating a position on legislation that affected operation of racetracks in Maryland and in making an offer to purchase another racetrack. The judge knew nothing of the representation which continued after the judge left the firm.

In Rodgers, the record established that the presiding judge's former law firm and his client would be called to testify about events that took place before the judge left the law firm. This was said to be in aid of the defense that the defendants'

29

conduct was no more culpable than that of the clients of the judge's former partner. The United States acknowledged that such evidence would be relevant. Holding that "matter in controversy" included the defense to be offered, the Fourth Circuit held that the record in Rodgers required recusal under § 455(b)(2).

In United States v. DeTemple, 162 F.3d 279 (4th Cir. 1998), the Fourth Circuit again applied § 455(b)(2) and, in doing so, the Court relied, in part, on its decision in Rodgers. As in Rodgers, the Court of Appeals in DeTemple examined the facts of the specific case, and explained that the statute should be applied in perspective of the nature and extent of the connection between the judge's prior professional association and the case then before him. Id. at 284. Then, the Court of Appeals, when identifying the matter in controversy, looked at the degree of attenuation between the prior case in which the judge's partners were involved and the case over which the judge was then presiding. Id. at 285. And, while acknowledging that there was some overlap in the two cases, the Fourth Circuit held that: "DeTemple has failed to show that the [matter which involved the former partner] concerned the case against him in more than a tangential way."

In deciding DeTemple, the Fourth Circuit cited with approval the decision of the Eighth Circuit in Little Rock Sch. Dist. v.

Pulaski County Special Sch. Dist. No. 1, 839 F.2d 1296, 1302 (8th
Cir. 1988) for the proposition that "issues in dispute must be
'sufficiently related' to constitute parts of same matter in
controversy." United States v. DeTemple, 162 F.3d at 286. In
the text cited by the Fourth Circuit, the Eighth Circuit had
held:

> Even if we accept appellant's argument that
> different cases may constitute the same
> "matter in controversy" . . . the question of
> what kinds of cases are sufficiently related
> for the purposes of § 455(b)(2) would remain
> a question of judgment and degree. We cannot
> say that the trial judge's former law
> partner's submission of an amicus brief in a
> case involving, to a large extent, different
> issues and different remedies two decades ago
> requires recusal under § 455(b)(2), nor do we
> believe that Congress intended such a result.

Little Rock Sch. Dist., 839 F.3d at 1302. Also, in DeTemple, the
Court of Appeals explained that the fact "that two suits might
have some facts in common [is] not controlling on whether they
qualify as the same matter in controversy." United States v.
DeTemple, 162 F.3d at 286.[17]

_____

[17] See also United States v. Walton, 56 F.3d 551 (4th Cir. 1995)
(finding that a judge who had worked at a law firm representing
the defendant in marijuana-related cases approximately 20 years
prior to the defendant's current indictment for marijuana-use
could preside without violating §§ 455(a) or (b) because the
judge's connection to the defendant was "attenuated"); United
States v. Cherry, 330 F.3d 658, 665 (4th Cir. 2003) ("[A]
presiding judge need not recuse himself simply because he

The instructions of the Fourth Circuit on those points guide the inquiry to be made here. And, those principles necessitate the conclusion that the admissibility in the Trade Secrets Case of documents from the Akzo Case and the discoverability of documents from the Akzo Case in this case do not involve the same matter in controversy.

To begin, the cases are really quite different in nature. In the Akzo Case, Akzo sued DuPont for patent infringement. This case alleges violations of the antitrust laws. It cannot be disputed that the elements of patent infringement claims and antitrust claims are quite different.[18] In like fashion, the

---

possesses some tangential relationship to the proceedings."); Horatio Clark Ford, III v. Bank of America, No. 99-2368, 2000 U.S. App. LEXIS 18109, at *5-6 (10th Cir. 2000) (unpublished table decision) (noting that a "district judge's association with the defendant's law firm almost twenty-five years before the filing of this case d[id] not provide reasonable grounds to question his impartiality" and finding no violation of either §§ 455(a) or (b)); Hoffenberg v. United States, 333 F. Supp. 2d 166, 175 (S.D.N.Y. 2004) (noting that the "significance of the relationship between the merits of the pending action and the purported basis for recusal is a crucial factor in determining whether the pending action and the allegations underlying the recusal motion involve the same matter in controversy") (citations omitted).

[18] Kolon often uses the term "the Akzo litigation" (referring to numerous different patent cases) in places other than Richmond. Kolon, however, does not contend that McGuireWoods was involved in any way in those other cases. The § 455(b)(2) analysis does not encompass any case other than the Akzo Case filed in this Court in 1985 and presided over by another judge of this Court.

elements of the claims in the Trade Secrets Case and the Antitrust Case are very different.

Kolon argues, in its recusal briefs, that the Akzo Case and this case are the same matter in controversy because DuPont's enforcement of its patents for Kevlar is some evidence of intent to monopolize. It should be noted initially that Kolon's SACC makes no such allegation.[19] Nor, contrary to Kolon's assertions, did the Fourth Circuit point to any patent enforcement litigation by DuPont as evidence of monopolistic intent.[20] Thus, as a threshold matter, the premise upon which Kolon bases its matter in controversy argument has not been joined as an issue in the case. It is, of course, axiomatic that the mere argument of

---

[19] In paragraph 17 of the SACC, Kolon does allege that DuPont's market position was protected by several patents, but that is a far cry from alleging unlawful patent enforcement.

[20] On that subject, the Fourth Circuit did note that Kolon had "alleged various actions undertaken by DuPont over time to protect its dominant market position, including: successfully seeking and obtaining a lien against imports of certain para-aramid fibers into the United States; 'scar[ing] off' others in the industry through track disputes; and fighting the U.S. International Trade Commission's revocation of antidumping duties on para-aramid fibers." Kolon Industries, Inc. v. E.I. du Pont & Co., 637 F.3d at 453. But, the Court of Appeals never mentioned any patent infringement action filed against or by DuPont. Nor, for that matter, do Kolon's briefs in the Fourth Circuit mention the topic.

33

counsel in briefs is not sufficient to place a matter in issue in a pleading.

But, even if Kolon had alleged that DuPont's enforcement of its patents was a part of some unlawful monopolistic scheme, or was evidence thereof, that would not make the admissibility of evidence from the 1985 Akzo Case in the Trade Secrets Case the same matter in controversy as whether information from the Akzo Case is discoverable in this case. To begin with, it must be remembered that Akzo filed the Akzo Case against DuPont, not vice versa. That alone, of course, vitiates the viability of the notion that the Akzo Case was some part of a monopolistic scheme initiated by DuPont. Yet, that is precisely the attenuated connection on which Kolon presses for recusal.

If Kolon could overcome that rather fundamental defect in its argument, it would nonetheless have to present some evidence that, in the Akzo Case, DuPont was engaged in the unlawful enforcement of its patents. Kolon has made no such showing. Nor could it.[21] In fact, Kolon's recusal papers make no showing of how discovery about the Akzo Case might help it prove the

---

[21] Although, in the Akzo Case, DuPont asserted a counterclaim against Akzo, it was based on a theory of non-infringement and invalidity and did not rely on a claim that Akzo had infringed a DuPont patent. Akzo N.V. v. E.I. du Pont de Nemours and Co., 635 F. Supp. at 1352-55.

34

Antitrust Case, making only generalized, conclusory assertions. Nor has Kolon explained how McGuireWoods' representation in the Akzo Case might tend to show DuPont's monopolistic intent.[22]

The best that can be said is that there may be some attenuated connection between the Akzo Case and this one. But, in fact, Kolon has not even shown that the two suits have facts in common. Moreover, the issue presented in the Antitrust Case by DuPont's motion for protective order and Kolon's reciprocal motion to compel is simply whether the information about or from the Akzo Case is discoverable. That is really quite different than whether DuPont waived the secrecy of trade secret information in the Akzo Case. And, even if one could find a linkage, it would be too tangential and attenuated to be the same matter in controversy.

On this record, it cannot be said that Kolon has met its burden to show that recusal is called for under § 455(b)(2).[23]

---

[22] How Kolon might be able to take discovery of DuPont's counsel about the Akzo Case has not been explained either. Again, Kolon supports its point with conclusory and vague allegations.

[23] Kolon's opening brief portends the need to depose two of the presiding judge's partners. Its reply brief simply says that depositions may be taken. That remote and speculative prospect is simply not enough to invoke the testimonial component of § 455(b)(2).

## 4. Section 455(a)

Kolon suggests that recusal under § 455(a) is appropriate because the record is unclear respecting McGuireWoods representation of DuPont in the Akzo Case and the Court's role therein. Mem. Supp. Motion for Recusal at 29-30. Kolon's reply brief barely addresses § 455(a), and, even then, only in vague and conclusory terms. Reply Mem. Supp. Motion for Recusal at 15-16.

Two preliminary matters will be addressed before addressing § 455(a). First, the record does not reflect that McGuireWoods or the presiding judge had any role in the so-called Akzo litigation that Kolon says occurred in Delaware and several foreign countries. According to the record, McGuireWoods, along with FitzpatrickCella, was counsel for DuPont in the case filed by Akzo against DuPont in 1985 in this Court.

Second, the record ought to be clear by now that the presiding judge has no recollection of any participation in the Akzo Case, and his lack of participation has been confirmed by a review of all available files and Court records, notwithstanding that the presiding judge did forward Akzo's Complaint against DuPont to Mr. Fitzpatrick (although the presiding judge has no recollection of having done that).

36

Section 455(a) provides that: "any justice, judge, or magistrate [magistrate judge] of the United States shall disqualify himself in any proceeding in which his impartiality may reasonably be questioned." Before it was amended in 1974, § 455(a) only required a judge to disqualify himself "in any case in which he ha[d] a substantial interest." Congress amended § 455(a) in order to promote "public confidence" in the judiciary and make "the statutory grounds for disqualification of a judge . . . conform generally with the . . . canons of the Code of Judicial Conduct." H.R. Rep. No. 93-1453 (Oct. 9, 1974).

## A. The Standard To Be Applied

In Liljeberg, the Supreme Court affirmed the Fifth Circuit's "construction of § 455(a)," finding that a violation of the statute "is established when a reasonable person, knowing the relevant facts, would expect that a justice, judge, or magistrate knew of circumstances creating an appearance of partiality." Liljeberg, 486 U.S. at 850. Thus, § 455(a) applies to those situations where a "reasonable person" would believe that the judge actually knew about the disqualifying interest at issue.[24]

---

[24] See also Chase Manhattan Bank v. Affiliated FM Ins. Co., 343 F.3d 120, 132 (2d Cir. 2003) (examining whether "a reasonable person would believe that the district judge knew he had a financial interest in a party to the litigation at some point before the decision on the merits" to determine whether there was a violation of § 455(a)); Davis v. Xerox, 811 F.2d 1293, 1296

"The determination of whether such an appearance has been created is an objective one based on what a reasonable person knowing all the facts would conclude." Chase Manhattan, 343 F.3d 127 (citing Liljeberg, 486 U.S. at 860-61). The analysis assumes that a reasonable person not only knows all the relevant facts, but also understands them. See Pepsico, Inc. v. McMillen, 764 F.2d 458, 460 (7th Cir. 1985). In weighing recusal, the trial judge must carefully weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning his impartiality simply might be trying to avoid what they apprehend may be an adverse ruling. See In re United States, 666 F.2d 690, 695 (1st Cir. 1981).

The general standard set out in § 455(a) "is not intended to be an invitation for judges freely to disqualify themselves whenever their impartiality is questioned on any ground." Hauptman v. Wilentz, 555 F. Supp. 28, 31 (D. N.J. 1982). As one expert on disqualification put it in hearings on the bill that became § 455(a):

> I want to make loud and clear for purposes of this record, because I assume that this record may have importance for many, many years in the future, that this does not mean that judges are going to be casually getting

(9th Cir. 1987)("[I]f a reasonable person would conclude from all the circumstances that the judge did not have knowledge at the time he sat, his rulings stand.").

> off the bench or that somebody can march up
> to a judge and say, 'Well, I just don't feel
> comfortable with you. I wish you would go
> away. I question your impartiality.' This
> is not to happen at all.

Hearings on S. 1064 Before the Subcomm. On Courts, Civil Liberties, and the Administration of Justice of the House Comm. On the Judiciary, 93rd Cong., 2d Sess. 14-15 (1974) (remarks of John P. Frank, Esq., Phoenix, Arizona, author of *Disqualification of Judges: In Support of the Bayh Bill*, 35 Law & Contemp. Prob. 43 (1970); *Disqualification of Judges*, 56 Yale L.J. 605 (1949); *Commentary on Disqualification of Judges*, 1972 Utah L.Rev. 377).

Another expert observed at the same hearing:

> [T]he longer the judge is on the bench, the
> less the likelihood that the general standard
> [of Canon 3(c)(1), which became 28 U.S.C. §
> 455(a)] will require his disqualification
> because of his former association [as former
> partner or former associate with a lawyer
> appearing before him].

Hearing on S. 1064 Before the Subcomm. On Improvements in Judicial Machinery of the Senate Comm. On the Judiciary, 93rd Cong. 1st Sess. 100 (1973) (remarks of Professor E. Wayne Thode, reporter for the ABA Committee on Standards of Judicial Conduct).

To apply the standard set by Liljeberg, it is appropriate to identify the facts that would be known to, and understood by, a reasonable person. Kolon, the party with the burden to establish that recusal is appropriate, has made the following points:

First, says Kolon, two of the presiding judge's partners represented DuPont in the Akzo Case along with another law firm at a time when the presiding judge was a partner. Second, the participation of the presiding judge in that case is unclear.

That view of the record, however, rather substantially misapprehends what the record shows about what the reasonable person would know. It is more accurate on the first point to say that a reasonable person would know that, more than twenty-five years ago, at a time when the presiding judge was a partner in McGuireWoods, two other partners in that firm represented DuPont in a case in which it had been sued for patent infringement and which did not involve the antitrust laws. As to the second point, the reasonable person would know that, at the request of FitzpatrickCella, the presiding judge sent to that firm a copy of the Complaint that Akzo had filed against DuPont, and the presiding judge responded by having the Complaint sent.

The reasonable person also would know that the presiding judge has no recollection of participating in that case. The reasonable person would know that, therefore, the presiding judge directed DuPont and McGuireWoods to review their files and records and those of FitzpatrickCella to determine if there was any indication that the presiding judge had participated in the

40

Akzo Case, and that the ensuing review confirmed that nothing in
the files reflected any such participation.

The reasonable person also would know and understand that,
at most, there is an attenuated, tangential connection between
this case and the Akzo Case.

The reasonable person would know and understand that, with
full knowledge of the facts that Kolon now says necessitate
recusal, Kolon's counsel, on July 22, 2011, said that getting the
letter from Mr. Fitzpatrick "was not something that, in my mind,
would trigger, you know, bias or anything like that." July 22,
2011 Tr. at 17. Of course, it would be known as well that, at
the time counsel made that statement, counsel was fully aware
that McGuireWoods represented DuPont in the Akzo Case in 1985 and
that, in 1985 and 1986, the presiding judge had been a partner in
McGuireWoods. The reasonable person would also know that Kolon
did not thereafter file a motion for recusal in the Trade Secrets
Case or the Antitrust Case and that the presiding judge
thereafter presided over a seven week trial of the Trade Secrets
Case and resolved numerous discovery motions in the Antitrust
Case.

A reasonable person would not be able to conclude that there
was a disqualifying circumstance or, even if there was, that the
presiding judge actually knew about it. Thus, there would be no

41

basis for recusal under § 455(a).  Kolon cites no decision in which, on a record such as this, it has been held that recusal is required by § 455(a).  Nor has any such authority been located by the Court.  The record here would not afford the basis for a reasonable person to question the presiding judge's impartiality, much less to believe that the presiding judge has at any time herein known of any basis for disqualification.

Because § 455(a) conforms with Canon 3 of the Code of Conduct for United States Judges, the foregoing analysis of § 455(a) would apply to resolve a challenge under Canon 3.  In any event, that challenge too, for reasons previously stated, would be untimely.[25]

---

[25]  Kolon is correct to point out that, under § 455 as opposed to § 144, judges have an obligation to identify the existence of grounds for recusal themselves "rather than requiring recusal only in response to a party affidavit."  See Liteky v. United States, 510 U.S. 540, 548 (1994).  However, if a judge does not identify such grounds, any party with knowledge of a basis for recusal must file a timely motion asking for disqualification. See e.g., United States v. Pearson, 203 F.3d 1243, 1276 (10th Cir. 2000).

Nor can § 455 possibly be read to require judges to identify grounds for recusal when they are unaware that such grounds exist, or where there, in fact, is no basis for recusal. Moreover, where, as here, a possible ground was obliquely raised by a party and it was discussed and inquired into fully, and the party did not pursue it further, a judge reasonably would conclude that no ground existed.  That is especially true where the party's counsel has said – after raising the point – that he knows no basis for "bias or anything like that."

5. **Vacatur**

The decision not to recuse makes it unnecessary to address the issue of vacatur of previous orders in this case.

## CONCLUSION

For the reasons set forth above, Kolon's MOTION FOR RECUSAL AND DISQUALIFICATION (Docket No. 247) will be denied.

It is so ORDERED.

/s/ _REP_

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: February 21, 2012

43